**CITY OF TAMPA, a municipal corporation, v. JAMES FINLEY.**

11 So. (2nd) 576                    January Term, 1943
February 2, 1943                              Division A
Rehearing Denied February 18, 1943

336

*Alonzo B. McMullen* and *Ralph A. Marsicano* for appellant.

*Hugh L. McArthur* and *Neil C. McMullen,* for appellee.

CHAPMAN, J.:

This appeal is to review a verdict and judgment for the plaintiff below, James Finley, against the City of Tampa entered in the Circuit Court of Hillsborough County, Florida. The action grew out of the alleged negligence of the City due to its failure to place barriers, lights, signs, or warnings of any kind, at a "dead end" street so as to warn travelers of designated dangers. The issues made by the pleadings were submitted to a jury under appropriate instructions, resulting in a verdict for the plaintiff below in the sum of $750.00. The issues were submitted under the second count of the declaration and pleas thereto.

The second count alleged that at the eastern terminus of Twigg Street, running east and west, in the City of Tampa, the said street intersected Thirteenth Street and came to an end, making what is known as a "dead end." Twigg Street was heavily traveled and the main road leading out of the center of the City of Tampa to points east; that directly east of the terminus of Twigg Street the City of Tampa maintained municipal docks for loading vessels, and adjacent to the docks is a channel used by vessels to moor and facilitate loading, making an immediate drop off the docks into the water approximately thirty feet deep. The drop is sixty yards east of the terminus of Twigg Street and between the terminus and the drop is a broad area, graded and covered with shell and kept in condition for motor vehicles to run from the terminus of Twigg Street to the docks and warehouses around the docks; that this condition existed for several years and the City of Tampa failed to place a barrier, light, sign, or warning of any kind to travelers of the danger, and of this danger the officials of the city knew, or by the exercise of ordinary diligence should have known, that the "dead end" of Twigg Street was hazardous and dangerous to the lives of travelers, and the plaintiff, on the 13th day of September 1939, was a stranger in the City of Tampa and at 11:30 P. M., while traveling east on Twigg Street, ran his car

off the dock into the channel, because of the negligence of the city, and described losses occurred to the plaintiff.

The City filed pleas (1) not guilty; (2) contributory negligence. The plea of contributory negligence alleged that the plaintiff (a) failed to operate his automobile at a careful and safe speed, having due regard for the traffic, surface and width of the street and violated a designated portion of a city ordinance; (b) the contributory negligence was the excessive rate of speed at which the car was being operated at the time of the receipt of the injuries described in Count 2 of the declaration; (c) the plaintiff was guilty of contributory negligence in operating the automobile at a rate of speed in excess of twenty miles per hour in violation of a designated ordinance; (d) the contributory negligence of the plaintiff in operating his automobile at the time and place of the receipt of the injuries at an excessive rate of speed so that it was impossible for the plaintiff to stop said automobile within the range of the vision of the lights of the car.

The controlling question posed by appellant for adjudication by this Court is viz: When the undisputed testimony shows that the plaintiff was driving his automobile at such a high rate of speed that he was unable to stop the same within his range of vision, and which contributed to the proximate cause of his damages, should not a verdict have been directed in favor of the defendant, or should not a new trial have been granted to the defendant after verdict for the plaintiff?

The car driven by the plaintiff at the time of the accident by the evidence is shown to have been in use only a few months and that the brakes and lights thereof were in first class condition. There is evidence to show that the plaintiff was driving at an excessive rate of speed when approaching the 13th Street and in crossing the street and rails his car swerved. Likewise there is testimony that he approached 13th Street at a reasonable rate of speed, and his car was under control and did not skid or swerve, and no dispute appears in the testimony about the absence of a barrier, sign, light or warning of any kind at the end of Twigg Street. Prior to the accident warning signs were maintained

by the City at this point, but were not there when plaintiff approached the dead end street.

The appellant cites the case of Rosen v. City of Miami, 141 Fla. 664, 193 So. 749, involving an automobile collision at the intersection of Southwest 16th Avenue with Southwest Eleventh Street in the City of Miami, in which this Court considered stop signs placed at street intersections to be observed by motorists for their safety when operating automobiles on the streets of a city. The stop signs applicable to motor traffic and street intersections are quite different from an unguarded run off of a dock into a ship channel of water several feet in depth and known to be hazardous or by the exercise of ordinary care should have been known.

The case of G. Ferlita & Sons, Inc., v. Beck, 143 Fla. 509, 197 So. 340, is cited and relied upon. The facts disclose an automobile collision on a highway, during the night time, and at the point of collision the road was straight, paved and level, and 22 feet in width. The truck was parked on the right side of the highway, the left wheels being on the highway and the lights of the truck were burning. Beck approached this parked truck at a rate of speed between 45 and 50 miles per hour. He could see the lights of the parked truck 600 feet prior to reaching it. A third car approached Beck with bright lights and Beck failed to reduce the speed of his car. We held that it was the legal duty of Beck, under the conditions and circumstances of the case, to have reduced the speed of his car so as to be able to stop or control his car within the range of the vision of the burning lights of his car, and because of his failure so to do he was guilty of contributory negligence, precluding a recovery by him. There was no light, barrier, sign or warning at the dead end street in the case at bar and the unguarded channel was a short distance away and the plaintiff, while having visited Tampa prior to the accident was not shown to have had any knowledge or information concerning this hazard and as a motorist was traveling the streets of the city which he had a lawful right to do. There are conflicts and disputes as to the rate of speed he was traveling at the time of the accident.

The case of City of Miami v. Saunders, 151 Fla. 699, 10

So. (2nd) 326, cited and relied upon by appellant, has been carefully considered. We held that a municipality is bound to use ordinary care in the construction and maintenance of its highways and to construct guard rails where their absence would leave the highway unsafe for ordinary travel. We held in the case *supra* that the plaintiff was guilty of contributory negligence as a matter of law and could not recover. The language employed by the Court is clear and is viz:

"Our conclusion is, after a careful study of the record and applying the legal principles enunciated in the cases above cited, that the city was guilty of no actionable negligence. There was no reason for the City to assume that anyone with ordinary intelligence would drive down that street at such a rate of speed as to run an automobile beyond the end of the street and come in contact with a pile of timbers which was plainly visible for a long distance from the end of the street. (It appears that the timbers were 12 inches square and some 10 or 12 feet long. Some of these timbers lay with end toward the street and others lay crosswise, the pile being approximately 3 feet high.) The very name of the Street, N. E. 4th Court, indicated that it was a cul de sac. 'Court' when used in connection with a street indicates 'a short street; a blind alley' (Practical Standard Dictionary); 'An open space like a short street enclosed by the dwellings or other buildings that face upon it.' Webster's International Dictionary, 2nd Ed., Unabridged."

In this case the obstruction or pile of lumber at the dead end street was plainly visible for a long distance and could easily have been observed by the plaintiff had he used ordinary care and had the car not been driven at a high rate of speed. In the case at bar we have a street (used as an arterial highway), extensively traveled; the plaintiff was a stranger to the locus; the ship channel was not within the vision of the lights of his car, and there were no signs or warning signals at the end of Twigg Street, although such warnings or signs had previously been maintained by the City but not at the time of the accident. It is these conditions and circumstances that distinguishes the case at bar from the case of City of Miami v. Saunders, *supra,* where we held that

340

contributory negligence appeared as a matter of law. We conclude that contributory negligence as a matter of law does not appear from the facts and circumstances in the case at bar, but are questions of fact for a jury under appropriate instructions by the trial court. We fail to find error in the record and the judgment appealed from is hereby affirmed.
Affirmed.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.