123 So.2d 400 (1960)
CITY OF HIALEAH, Florida, a municipal corporation, Appellant,
v.
Claire REVELS, individually, as widow of Donald C. Revels, deceased, Appellee.
No. 59-170.
District Court of Appeal of Florida. Third District.
July 28, 1960.
On Petition for Rehearing November 28, 1960.
*401 R.F. Miles, Hialeah, and Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellee.
HORTON, Chief Judge.
The City of Hialeah, defendant below, appeals from a final judgment of $125,000 entered upon a jury verdict in a wrongful death action.
The appellee's husband was reported missing on May 26, 1957. Approximately three months later, on July 27, 1957, an automobile driven by one Sterling Davis plunged into the Little River Canal at the foot of East 5th Avenue in Hialeah, Florida. In the recovery of the automobile and the body of Mr. Davis, a second automobile was discovered underneath the Davis automobile which contained the body of the appellee's husband. The appellee's case was based largely upon circumstantial evidence since there were no eyewitnesses to the accident out of which this action *402 arose. The record of the trial proceedings discloses that on the evening of May 25th, the deceased, who had been employed as a barber for approximately four and one-half years in a downtown Miami barbershop, had gone to Hialeah to assist a friend in closing his shop. Upon leaving the shop, the deceased and his friend discovered that their automobiles were blocked by a wedding party then in progress. The deceased and his friend then joined the party and, as testified to by his friend, the deceased had one or two beers. At approximately 8:00 p.m., the deceased and his friend separated after leaving the wedding party with the deceased indicating an intention to stop and purchase a bottle of liquor before going to his home where he was to meet his friend for dinner. While at the wedding party, the deceased phoned his wife and indicated to her that he would be home in ten or fifteen minutes. He never returned and was never seen alive again by his wife or friend. The only other person who allegedly saw the deceased prior to the recovery of his body in the Little River Canal was one McKillop whose testimony was presented at trial by way of depositions to the effect that he had seen the deceased in a Hialeah bar between 11:30 and midnight on May 25, 1957; that the deceased had stayed in the bar approximately fifteen minutes and had left the bar by the same door which he had entered and his condition appeared to be normal.
Photographs introduced at the trial, as well as an engineer's sketch of the area in question, show that the Little River Canal at the place where the decedent's automobile and body were discovered, runs approximately east and west. The paved portion of East 5th Avenue terminates where it meets 52nd Street. Approximately 130 feet intervenes between the north edge of 52nd Street and the south edge of the Little River Canal. There is a stop sign on a pedestal in the southeast corner where East 5th Avenue and 52nd Street meet. There is also a light pole with a street light affixed thereto approximately 20 feet above the ground. There were no barricades or warning signs between the south edge of the canal and the north side of 52nd Street. The physical area between the north side of 52nd Street and the south side of Little River Canal was variously described by witnesses as a roadway approximately eighteen feet wide which had been formed by a dredging operation, clear, graded and bulldozed, and had been used by numerous dump trucks at the time of the dredging operation. Other witnesses referred to this area as containing weeds, some fill, rock and some silt, becoming sandier and softer as one progressed closer to the canal bank. The evidence demonstrates that one was unable to see the canal from the point where East 5th Avenue and 52nd Street met, and that it was necessary to approach within approximately 32 feet of the canal before one became aware of its presence. Across the canal on the north side, light poles appeared on one side of East 5th Avenue with houses on both sides of the street, giving the illusion from 52nd Street of a continuation of East 5th Avenue. There was, however, a cable crossing sign erected on the north bank of the canal that would have covered a portion of East 5th Avenue right of way had that avenue continued across the canal. There also appeared to be some Australian pines north of the canal which, it was contended, would have been in the line of travel if East 5th Avenue had extended across the canal.
The appellant has argued ten points under 55 assignments of error seeking reversal of the judgment appealed. Six of the ten points raised are directed to various rulings during the course of the trial. Two points are directed to the court's alleged erroneous charges to the jury with the remaining two points attacking the sufficiency of the evidence to support the verdict and the claimed excessiveness of the verdict.
We will consider first the question of liability or the legal sufficiency of the *403 evidence to support the verdict. The appellee charged the city with negligence in failing to have barricades or warning signs erected for motorists in the area and that as a result of such failure the deceased met his death. It was contended by the city that under the circumstances no warning signs were necessary and that the deceased was guilty of contributory negligence which would bar recovery.
Without delineating all the evidence, but having considered it in its entirety, suffice it to say that there was evidence, legally sufficient, if believed by the jury to warrant the conclusion that under the circumstances depicted there was a duty upon the city to erect signs or barricades warning motorists of the proximity of a dangerous hazard, to-wit: a canal. It was not demonstrated as a matter of law that there was no duty upon the city to warn of the proximity of a hazard such as a canal. Brinson v. City of Mulberry, 104 Fla. 248, 139 So. 792; Town of Palm Beach v. Hovey, 115 Fla. 644, 155 So. 880; City of Phoenix v. Mayfield, 41 Ariz. 537, 20 P.2d 296, 173 A.L.R. 626. A court should never direct a verdict in an action for negligence where there is any substantial testimony from which the jury could find the issues in favor of the plaintiff. Unless the conclusion follows as a matter of law that no recovery could be lawfully had upon any views taken of the facts that the evidence tends to establish, a case should not be taken from the jury by the direction of a verdict. See Gravette v. Turner, 77 Fla. 311, 81 So. 476; Rosenfeld v. Knowlton, Fla.App. 1959, 110 So.2d 90.
A facet of appellant's contention that there was no liability is the question of the alleged contributory negligence of the decedent. All that we have been able to gather from the evidence adduced is that the deceased, somewhere around 8:00 p.m., on the night of May 25th had two or three beers. He was allegedly last seen alive between 11:30 and midnight of the same day in a bar and his condition was described as "quite normal." Other than the fact of the discovery of the deceased's body and his automobile in the canal, nothing further is known regarding his actions or condition preceding the fatal plunge. The appellant draws many conclusions adverse to the deceased based upon surrounding circumstances and the deceased's familiarity with the various bridges over the canal, the obvious condition of the 130-foot area north of East 52nd Street, the appearance of the area north of the canal, and other known factors. These were, of course, conclusions that the jury could likewise have drawn from the same circumstances and conditions but for reasons unknown refused to do so. We fail to find any evidence upon which it could reasonably be concluded that the deceased was guilty of contributory negligence as a matter of law. Absent such conclusion the question of contributory negligence would ordinarily be one for the jury and their resolution of that fact in this case will not be disturbed. See 23 Fla.Jur., Negligence, § 132, and cases collected therein.
The appellant next contends that the verdict was excessive. At the time of his death, the decedent was a 31-year-old barber earning approximately $5,000 a year with a life expectancy in excess of 39 years. The appellee testified that the deceased had contributed $60-65 a week to her for living expenses, mortgage payments, etc. No children were born of the marriage. It was suggested that the deceased had children by a prior marriage, but it is claimed the trial judge erroneously denied the appellant the right to submit evidence showing contributions, if any, made by the deceased toward the care of these children. This attempt was for the purpose of showing other obligations of the deceased and the fact that he would have little left to contribute to the living expenses of himself and the appellee. The appellant's claimed error on the refusal of the trial judge to permit evidence of other contributions is without merit. No testimony was proffered or sought to be proffered as to any contributions made by *404 the deceased to anyone other than the appellee. It is true that the appellant sought to cross-examine the appellee as to what payments, if any, the deceased had made to children by a prior marriage, but this was objected to and the objection sustained by the court. The matter was not pursued further by an attempt to present evidence by way of proffer or otherwise. Under the conditions of the record, we do not think the point is well taken.
The mortality table as to life expectancy of both the deceased and the appellee was, we think, properly submitted to the jury under appropriate charges as to its probative value. The jury was charged that they were not bound by the mortality table, but could consider it together with the other evidence in determining the future life expectancies. This, we conclude, was a correct charge. The appellant suggests that if the judgment was proper, it should not have exceeded $50,000, but does not indicate upon what basis this figure is premised. If a successful attack is to be made upon a verdict for alleged excessiveness it must be shown and determined upon the record or the amount such as to shock the conscience of the court, or it must appear that the jury was influenced unduly by passion or prejudice, or that the jury misconceived the evidence, failed to consider essential elements of damage involved or to consider and decide issues submitted, misused the law as charged, or otherwise failed to discharge their duty as they were directed by the court. DeVane v. Bauman, 82 Fla. 346, 90 So. 192; De La Vallina v. De La Vallina, 90 Fla. 905, 107 So. 339; Elks Club of Tampa v. Adair, 95 Fla. 415, 116 So. 26; Wise v. Jacksonville Gas Corporation, Fla. App. 1957, 97 So.2d 704; Breitbart v. State Road Dept. of Fla., Fla.App. 1959, 116 So.2d 458. See Butler v. Borowsky, Fla.App. 1960, 120 So.2d 656; McKesson & Robbins, Incorporated, v. Barwick, Fla. 1957, 95 So.2d 601. We fail to find that the verdict is excessive.
We have carefully considered the other assignments of error raised by the appellant as they pertain to certain rulings on evidentiary matters by the trial judge, and fail to find reversible error.
Finding as we do that the judgment appealed is without error, it should be and is hereby affirmed.
Affirmed.
PEARSON and CARROLL, CHAS., JJ. concur.

On Petition for Rehearing Granted
PER CURIAM.
Petition for rehearing was granted by this court on September 20, 1960, and the cause was re-argued on the merits on October 31, 1960.
Upon a reconsideration, and after oral argument aforesaid, the court adheres to its opinion and judgment filed July 28, 1960.
HORTON, C.J., and PEARSON and CARROLL, CHAS., JJ., concur.