381 So.2d 1114 (1979)
IRE FLORIDA INCOME PARTNERS, LTD., Appellant,
v.
Dean Aloysius SCOTT and Maria W. Scott, Appellees.
No. MM-123.
District Court of Appeal of Florida, First District.
November 7, 1979.
Rehearing Denied November 30, 1979.
*1115 Robert P. Gaines and K. Jeffrey Reynolds, of Beggs & Lane, Pensacola, for appellant.
J.B. Murphy, Jr., of Murphy, Beroset & Parks, Pensacola, for appelles.
LARRY G. SMITH, Judge.
The sole issue on this appeal is whether there was evidence of negligence on the part of the appellant-landowner, IRE Florida Income Partners, Ltd. (IRE), upon which to base a jury verdict awarding damages to the appellees, Mr. and Mrs. Scott, for injuries received by Mrs. Scott in an accident on IRE's property. We have concluded that liability was not established, and that the judgment must be reversed.
Mrs. Scott was seriously injured when she drove her automobile into a drainage ditch forming the western boundary of IRE's property, a shopping center located in the Pensacola area, referred to as the "Woolco" shopping center. On the afternoon in question, Mrs. Scott had been to another department store, Gayfers, looking for a certain item to purchase. That store did not have it, but it was suggested that she might find it at Woolco, located nearby, but in a separate shopping center. There was some discussion between Mrs. Scott and a sales clerk at Gayfers concerning a "back way" or "short cut" to Woolco's, but the exact directions given, if any, are not clear from the record. Mrs. Scott left Gayfers, and travelled south on "L" street. At a point where she could look to the east and see the Woolco store (which had a large Woolco sign on the side of the building visible to her), she saw what appeared to her to be a road across an open, unpaved area, leading to the Woolco parking lot. She and other witnesses testified as to the appearance of the unpaved area, describing it as being a place where there was no vegetation, the grass was worn away, just dirt or sand, and what appeared to be automobile tire tracks. In order to reach that area, however, when she turned off of "L" street she was first required to drive her automobile over a narrow unpaved area and onto a concrete apron or parking lot (which apparently served an adjacent go-cart track). After traversing the narrow dirt strip, and the paved parking lot, she then ran her car off of the pavement onto the dirt area that she said appeared to be a road or access. Measurements showed that from the edge of the paved area to IRE's ditch was 240 feet. It was also established that since the ground level on the west side of IRE's ditch was somewhat higher than the level of IRE's parking area on the east side of the ditch, the ditch was not visible to one driving an automobile toward it from the west until a fairly short distance from it (one estimate was 35'). Appellees base their argument of liability upon the existence of an "illusion" created by the worn away appearance of the unpaved ground, what appeared to be automobile tire marks, and the ground elevation which obscured the ditch from a distance. They also contend that the Woolco sign on the building, as well as a sign mounted on a pole in the Woolco parking lot tended to support the existence of the illusion, or invitation on the part of travelers such as Mrs. Scott to attempt to use that route for access to the Woolco store.
The concrete ditch, approximately twelve feet wide and ten feet deep, ran the entire length of the western boundary of IRE's property. It was located on IRE's property. A concrete curb ran along the east side of the ditch so as to prevent automobiles on the Woolco parking lot from falling into it, but there was no curb, fence or other barricade along the western side of the ditch, at least at the point where the accident occurred.
Appellees argue in support of the judgment rendered in the court below that IRE is liable because it "permitted the illusion of an approach to exist without warning invitees of the danger". However, we fail to find evidence which would support this conclusion. The unpaved 240 feet of ground traversed by Mrs. Scott's car before it fell into the ditch was not under IRE's ownership or control. Neither was the go-cart parking strip, nor the unpaved strip crossed by Mrs. Scott's car to get to the go-cart parking area when she left "L" street. The *1116 territory crossed by Mrs. Scott on her way to the ditch was in fact not a right-of-way, access, or approach of any sort to IRE's property. If an "illusion" existed, by reason of the appearance of the adjoining landowner's property, IRE did not create it; and there was no evidence from which the jury could have found that IRE could reasonably have anticipated that someone would attempt to use the open, unpaved area as an approach to the Woolco store. Although an employee of Woolco testified that cars had driven into the ditch on two prior occasions (one car approximately a year, and one approximately two months prior to Mrs. Scott's accident), there was no evidence that IRE had knowledge of these incidents. Furthermore, neither incident was pinpointed as to the exact dates, time of day, persons involved, nor any facts whatever disclosing how those occurrences happened. The exact place where these two cars had allegedly entered the ditch was not specifically located. The most definite testimony was that they were simply "approaching from the west". There was no evidence that the drivers of those cars were prospective customers heading from the Woolco parking lot. It would simply be piling inference upon inference to assume that these prior accidents were similar in any respect to Mrs. Scott's.
Appellees also argue the existence of the signs as a factor leading to a conclusion of negligence on the part of IRE. We do not consider that the existence of the large "Woolco" sign appearing on the side of the building as being sufficient to warrant serious consideration. The world abounds with signs identifying business establishments; and besides, Mrs. Scott knew exactly where the Woolco store was located, without the benefit of any sign. The other sign was one erected on a pole adjacent to a traffic lane in the Woolco parking lot, directing patrons to the Woolco Auto Center. There was nothing unusual in the appearance or location of this sign. It was elevated well above car top level and contained the wording "Woolco Auto Center", together with an arrow pointing in a northerly direction, or toward the rear of the Woolco store. This latter sign was located on the east side of an approximately twenty foot traffic lane which ran parallel and adjacent to the ditch into which Mrs. Scott drove her automobile. The width of the ditch being twelve feet, this sign would have been about thirty-two feet from the westernmost edge of the ditch. As Mrs. Scott approached from the west, the elevated sign was not directly in her forward line of sight, but was off to her right a distance of several feet. In fact, the sign was considerably to the right of what would have been the extended southerly boundary of the imaginary right-of-way Mrs. Scott traversed on her way toward the ditch.
The sign itself, in a negligence sense, was totally benign. We can find no logical basis for a finding of liability upon the landowner predicated upon the mere possibility that a person might look out across adjacent property, leave a paved street, and be drawn toward the sign, over unpaved open ground, like a moth to a flame, and thereby injured. We conclude that where, as here, there is no evidence that the sign was improperly constructed or located, so as to constitute a hazard to or mislead patrons using the premises and its recognized approaches and access routes in the customary manner, a finding of negligence predicated upon the existence of such a business sign, without more, cannot be allowed to stand. We note, parenthetically, that no evidence was presented that IRE erected this sign, or was responsible for its appearance or the information conveyed by it.
Additional facts supporting our conclusion are that Mrs. Scott was not a new resident to the locality, and she had been to both shopping centers many times. She was aware of the existence of the ditch, although her testimony was that she had seen it only from the "other side" (the Woolco side), but she had never noticed how deep or how long it was. She was also aware the sign was there. She further stated that there were no signs or markers to indicate the existence of a roadway at the point where she departed from "L" *1117 street and drove toward the ditch. The accident happened on a clear, bright and sunny afternoon, at approximately 3:30 p.m. She maintained that she was driving slowly, but did not have time to stop her car before falling into the ditch.
The general principle governing liability of a landowner applicable here is that an owner or occupant is liable for an injury sustained by a person, who entered the premises by invitation, as a result of a defective condition of the premises, only where the part of the premises on which the injury was sustained was covered by the invitation. If a person, though on the premises by invitation, goes to a place not covered by the invitation, the owner's duty of care owed to that person as invitee ceases forthwith. The duty to keep the premises safe for invitees extends to all portions of the premises that are included in the invitation and that are necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended. This includes places where his presence should reasonably be anticipated, as well as places where he is allowed to go. 23 Fla.Jur., Negligence, Section 48. And further:
"The duty extends to approaches to the premises which are open to invitees in connection with their business on the premises, and which are so located and constituted as to represent an invitation to visit the place of business and to use such means of approach." (23 Fla.Jur., Negligence, Section 48, pocketpart, note 12.1)
Appellant urges, and we agree, that appellees' reliance upon Shields v. Food Fair Stores of Florida, 106 So.2d 90 (Fla. 3rd DCA 1958), is misplaced. That case held that a complaint sufficiently stated a cause of action for injuries sustained by the plaintiff when he fell while riding his motorbike as he turned from a public street and was crossing the shoulder of the road connecting the street with the drive-in or entranceway to defendant's parking area. In that case the injury occurred off of defendant's premises, but upon a portion of the shoulder of the road that was the regular approach provided by defendant for access to its premises, and, according to the allegations of the complaint, was actually maintained by the defendant. In our view the facts of the Shields case distinguish it totally from the facts in the case now before the court. The appellee here, Mrs. Scott, was injured by virtue of her attempt to use an area which was not an approach or accessway to appellant's property, and which was neither owned nor maintained by appellant.
We have examined a number of the cases which have been cited to us by the parties which involved injuries to motorists entering or approaching a landowner's premises from a public road. These cases typically involve automobiles driven off the end of dead-end streets into water, some obstruction, or a ditch. Liability was held to be a jury question in City of Tampa v. Finley, 152 Fla. 335, 11 So.2d 576 (1943), where the plaintiff, a stranger to the locality, drove his automobile off the end of an unmarked, unbarricaded arterial highway onto adjacent property and into a ship channel located a distance of some sixty yards from the end of the street. Warning signs had previously been maintained by the City, but were not in existence at the time of the accident, and the court concluded that contributory negligence as a matter of law did not appear from the facts and circumstances in the case. In City of Miami v. Fuller, 54 So.2d 198 (Fla. 1951), a jury verdict for plaintiff was reversed where plaintiff, during the nighttime, drove his automobile over a bulkhead and into Biscayne Bay, when he apparently was distracted by lights from a nearby business, although the roadway itself was clearly marked. A jury verdict for plaintiff was affirmed in City of Hialeah v. Revels, 123 So.2d 400 (Fla. 3rd DCA 1960), where there were stop signs or signals at the end of a street, but no barricades or warning signs to prevent a motorist from continuing beyond the end of the paved street onto a roadway, graded and bulldozed, which had been used by trucks and equipment during a dredging operation, and beyond which was a canal into which a *1118 motorist's automobile was driven. Across the canal, in the direction in which the paved street appeared to extend, there were light poles on one side of the street, and houses on both sides of the street, giving the illusion of a continuation of the street. Liability was predicated upon the failure of the City to have barricades or warning signs erected to warn motorists and to prevent them from plunging into a dangerous hazard, the canal.
In Drady v. Hillsborough County Aviation Authority, 193 So.2d 201 (Fla. 2nd DCA 1966), the law as stated in Louisville and N.R. Co. v. Anderson, 39 F.2d 403 (5th Cir.1930), was approved. In the Louisville case, the plaintiff drove off of a street paved with black dirt, early on a dark and foggy morning, and onto defendant's adjacent property where the street would have been, if extended, and which was paved with black cinders. In holding plaintiff was entitled to recover, the Louisville court stated:
"If it [excavation or obstruction] is far enough from the highway not to endanger one who remains upon it, then liability can be imposed upon the occupant of the premises only if he creates a deceptive appearance of the situation, such as would justify a reasonably prudent man in straying from the highway, believing himself to be still upon it. If the occupant might reasonably have anticipated, as a prudent person, that a reasonably prudent traveler, owing to the appearance of the situation by him created, might stray from the highway in the belief that he was still on it and fall into the excavation, liability would ensue." (Louisville and N.R. Co. v. Anderson, supra).
The Drady court, applying the law as stated in the Louisville case, held the complaint for damages sufficient, noting that in the Louisville case, and each case cited in support by the plaintiff, the adjacent property owner (defendant) "had a paved road of some sort which created the appearance of a public road".
As already stated, IRE had created no road of any kind, paved or unpaved, and had done nothing that could reasonably be held to have created the appearance of a road.
There are other cases finding no liability upon the part of the landowner, although under differing factual circumstances, where the owner had no reason to expect the injured person to be at the place where the injury occurred. See Hickory House v. Brown, 77 So.2d 249 (Fla. 1955); Margrabe v. Graves, 97 So.2d 498 (Fla. 1st DCA 1957); and Dunlop v. Reynolds, 204 So.2d 754 (Fla. 2nd DCA 1968). Of course, in viewing all of the earlier cases in Florida, we must take into account the subsequent adoption of the comparative negligence rule in Florida, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); but we find nothing in the application of that rule that would change the result we have reached.
The fact that unknown persons used the adjacent property by driving vehicles on it for some unknown purpose, at some unknown time in the past, resulting in the wearing away of the grass and other vegetation from the ground surface, furnishes no basis for imputing knowledge to IRE that this condition existed. Had the area actually been used as an approach or access to IRE's property, then an entirely different case would be presented. But here the area was not an access and in fact could not be an access, since there was no way for an automobile to traverse the ditch. Under the circumstances, even if knowledge of the worn away condition of this unpaved adjacent area should be imputed to IRE under any theory, there is no evidence upon which a jury might reasonably conclude that IRE knew or should have known that a trespasser on that adjacent property might attempt to use the area as an access to IRE's property. A far greater showing would have to be made to warrant a finding that IRE knew, or in the exercise of reasonable care should have known, that a person would drive an automobile at such a rate of speed over this unpaved terrain as to be unable to stop before plunging into an open ditch on a clear day at 3:30 in the afternoon.
*1119 For the foregoing reasons the judgment appealed from is reversed.
MILLS, C.J., and BOOTH, J., concur.