514 So.2d 1116 (1987)
CITY OF MILTON, Florida, Appellant,
v.
Charles Anthony BROXSON, Appellee.
No. BK-119.
District Court of Appeal of Florida, First District.
October 28, 1987.
Rehearing Denied November 24, 1987.
*1117 J. Craig Knox and Fred M. Johnson of Fuller & Johnson, P.A., Tallahassee, for appellant.
Robert J. Mayes and Eric H. Faddis of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellee.
NIMMONS, Judge.
The City of Milton appeals from a final judgment entered upon a jury verdict in favor of the plaintiff/appellee, who was seriously injured by an errantly-thrown softball in a city-owned park. Appellant claims that the trial court erred in denying its motion for summary judgment[1] and its motions for directed verdict made after the close of the plaintiff's case and after the close of all the evidence. We disagree and affirm.
One evening in June 1980, the almost 18 year-old plaintiff was in attendance at Sander's Creek Park watching a softball game in progress. The plaintiff left his seat in the bleachers and walked over to an area behind the third base dugout. After a few minutes, the plaintiff turned and appeared to be headed back to the bleachers when he was struck in the head by a softball thrown by Robert Nelson, one of the players who was warming up with several other players for the next scheduled game. The area where the plaintiff was injured was adjacent to the bleachers. There were lawn chairs in that area where spectators commonly sat to watch the games. The area in which Robert Nelson and the other players were warming up was in close proximity to the area where the plaintiff was struck. In fact, some of the spectators in lawn chairs were within five feet from some of the players warming up.
There was evidence that there was no area designated for players to warm up while waiting for the prior game to end, that it was a common practice well known to the appellant for the players to warm up in the same area as described above, that spectators had been struck in the past by balls errantly thrown by players warming up in that area, and that the appellant, although having knowledge of such instances and the hazardous nature of such activities, did nothing (until after the subject accident) to prevent the players from warming up in such close proximity to spectators.[2]
Appellant contends that it was not legally responsible for the plaintiff's injuries because it had no duty to warn him of dangers or risks which should have been apparent to those attending the softball games at the subject park. Appellant *1118 points out the fact that the plaintiff himself had played softball in the past, had previously attended games at that park as a spectator, and was familiar with the risks involved in the positioning of oneself in the subject area while players were warming up.
The plaintiff on the evening in question occupied the position of an invitee vis-a-vis the appellant/City. Since the Florida Supreme Court adopted the "invitation test," an invitee may be either a business visitor or a public invitee. Post v. Lunney, 261 So.2d 146 (Fla. 1972); Wood v. Camp, 284 So.2d 691 (Fla. 1973); 41 Fla.Jur.2d Premises Liability Section 7. In Florida, the landowner owes the following duties to an invitee: (1) to use reasonable care in maintaining the premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils which are or should be known to the landowner and which are unknown to the invitee and cannot be discovered by him through the exercise of due care. Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967, 970 (Fla. 1977); Cassel v. Price, 396 So.2d 258, 264 (Fla.1st DCA 1981); Emmons v. Baptist Hospital, 478 So.2d 440 (Fla. 1st DCA 1985).
With respect to the landowner's duty to warn the plaintiff, a prerequisite to such duty is that the defendant's knowledge of the danger must be superior to that of the business invitee. Hunt v. Slippery Dip of Jacksonville, Inc., 453 So.2d 139 (Fla. 1st DCA 1984); Emmons, supra. We agree with appellant that, although the appellant had knowledge of the danger to spectators situated in the area where players were allowed to warm up, the appellant's knowledge of such danger was no greater than the plaintiff's knowledge. However, the inquiry does not end there for, as indicated above, the landowner also has the duty to invitees to maintain the premises in a reasonably safe condition, including the elimination of dangerous conditions of which the landowner has actual or constructive notice. Budet v. K-Mart Corporation, 491 So.2d 1248 (Fla. 2d DCA 1986).
In Restatement of Torts, Second, Section 343A, the following is stated:
A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (e.s.)
This section has been recognized as valid authority in Florida. E.g. Emmons, supra; Lynch v. Brown, 489 So.2d 65 (Fla. 1st DCA 1986).
In Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th DCA 1986), our sister court explained[3]:
Where an invitee's knowledge of a dangerous condition will adequately protect him from harm, an owner's duty with regard to the condition is limited to giving proper warning, where required. The invitee can be expected to protect himself against such risks. However, where the danger is of such a nature that the owner should reasonably anticipate that it creates an unreasonable risk of harm to an invitee notwithstanding a warning or the invitee's knowledge of the danger, then reasonable care may require that additional precautions be taken for the safety of the invitee. Pittman v. Volusia County, 380 So.2d 1192, 1194 (Fla. 5th DCA 1980), citing and quoting from W. Prosser, Law of Torts, 394-395 (4th Ed 1971) and Restatement of Torts, Second, Sec. 343 A. Concerning such hazards, the owner can be held liable to the invitee for failing to exercise reasonable care, even though the invitee was himself negligent in encountering the known danger, thus subjecting his claim to the defense of comparative negligence. Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985); *1119 Ferber v. Orange Blossom Center, Inc., 388 So.2d 1074 (Fla. 5th DCA 1980).
Id. at p. 96 (footnote omitted).
We believe that it can fairly be said that the hazardous activity which the appellant allowed to continue without taking appropriate steps for the safety of the spectators was of such a nature that the appellant should have reasonably anticipated that such hazardous activity would cause spectator injury notwithstanding the spectators' knowledge of the danger. At least the evidence respecting the above was such that the case was properly permitted to go to the jury. Compare Emmons, supra (under facts of that case, actions of hospital in maintaining the area in and about hospital room did not create unreasonable risk of harm to visitor having knowledge of hazardous condition).
It is well settled that the authority of a trial court to direct a verdict must be exercised with caution and that a verdict should not be directed for a defendant unless it is clear that there is no evidence whatever that could in law support a verdict for the plaintiff. White v. Arvanitis, 424 So.2d 886, 888 (Fla. 1st DCA 1982); Budgen v. Brady, 103 So.2d 672, 674 (Fla. 1st DCA 1958). We conclude that the trial court did not err in denying the motions for directed verdict on the grounds asserted by it that there was no breach of duty by it to the plaintiff.
Appellant also contends that the trial court should have directed a verdict in its favor on the grounds of sovereign immunity. We disagree.
Under the four-category criteria established in Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the subject recreation park appears to qualify best as a Category 4 function or activity of appellant. This category includes those functions providing professional, educational and general services for the health and welfare of the citizens.[4]Id. at 921. In accordance with Trianon Park, the next step is to determine, by the application of the Commercial Carrier[5] standards, whether the defendant's acts or omissions were of a planning or operational variety.
While it is a discretionary or planning level decision for a governmental entity to operate a recreational facility to accommodate organized softball games and spectators of such games, once the government decides to operate such a facility, it assumes the duty to operate the facility safely  just as a private individual would be so obligated  without benefit of sovereign immunity. See Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002, 1005 (Fla. 1986). Appellant urges a different result where, as here, the hazardous condition or activity is not concealed, but instead apparent to the plaintiff. Under current sovereign immunity analysis, as we understand it, this  that is, the plaintiff's awareness of the hazardous condition  becomes a factor only if a Trianon Park Category III or IV function is at the planning level, in which case an exception to planning level immunity may "kick in" under the Neilson trilogy.[6] Under those cases, there is immunity for planning level activities unless their performance creates a dangerous condition which is known to the government and not apparent to the public. However, as we have said, the Category IV function in the instant case was at the operational level and the plaintiff's awareness of the hazardous activity or condition is therefore of no moment with respect to the sovereign immunity issue. Rather, the appellant's liability must be determined by the common law standards previously discussed in this opinion *1120 governing the duty of landowners to invitees.
AFFIRMED.
JOANOS, J., concurs.
THOMPSON, J., dissents with written opinion.
THOMPSON, Judge, dissenting.
I dissent. The lower court erred in not granting appellant's motions for directed verdict made at the close of the plaintiff's case and at the conclusion of all evidence. I would reverse and remand with instructions to enter a judgment notwithstanding the verdict for the defendant/appellant City of Milton (City).
The degree of care a landowner owes a person entering his property depends almost entirely on whether that person is an invitee, a licensee or a trespasser. A greater duty of care is owed to an invitee than is owed to a license or trespasser. The majority opinion holds that the plaintiff Broxson was an invitee. Neither the facts nor the case law cited by the majority support its finding that Broxson was an invitee. On the contrary, the facts as reflected by the record and as recited in the majority opinion show that at the time he was injured Broxson was an uninvited licensee at best, and at worst, a trespasser. In addition, all the cases cited involved a condition of the property, not an activity on property, as in this case.
There was no testimony from Broxson as to what he did after arriving at the ball park on the evening in question. Although he could remember the exact content of conversations leading up to his going to the ball park, as well as everything he did until he got there, after his arrival he could "remember nothing except getting hit." According to one witness, after arriving at the ball park Broxson sat near her in the western bleachers. They talked for 10 or 15 minutes before Broxson saw some other persons to whom he wanted to speak. Another witness who had ridden to the game with Broxson stated that they sat in the stands watching the game for three innings. Broxson then left his seat in the bleachers (which the City had furnished for spectators) to talk to some of the players warming-up on the ball field. Broxson therefore must have been in the bleachers at least 15 or 20 minutes although he has no memory of this. When he left his seat in the bleachers and moved to the area where players were warming-up he ceased to be an invited spectator and became at best a mere licensee. Dougherty v. Hernando County, 419 So.2d 679 (Fla. 5th DCA), pet. for rev. denied, 429 So.2d 5 (Fla. 1983); IRE Florida Income Partners Ltd. v. Scott, 381 So.2d 1114 (Fla. 1st DCA), cert. denied 388 So.2d 1118 (Fla. 1980). As an implied invitee spectator, and not a player, Broxson's implied invitation was only to use the bleachers furnished for spectators, the restroom and concession facilities afforded for his comfort, and their necessary access areas. This invitation did not extend to the playing field, warm-up area or other parts of the park facility, and he was not an invitee to these areas. He went down into the warm-up area to talk to friends and acquaintances for his own convenience and benefit, and was at most a licensee at the time of the accident. The only duty owed by the City was to avoid willful and wanton harm to him and to use reasonable care to warn him of a defect or condition known by it to be dangerous if such danger was not open to ordinary observation by him. Byers v. Gunn, 81 So.2d 723 (Fla. 1955); Crutchfield v. Adams, 152 So.2d 808 (Fla. 1st DCA), cert. denied 155 So.2d 693 (Fla. 1963). The record shows that there was no intention to willfully or wantonly harm the plaintiff, nor was there any failure to warn him of a defect or condition known by the City to be dangerous but not open to ordinary observation. The City's motion for directed verdict should have been granted.
Even if it is assumed for the purpose of argument that Broxson had the status of an invitee the record reflects that there was no violation of the duty owed by the City to an invitee. The evidence fails, as a matter of law, to show that the City failed to use reasonable care in maintaining the premises in a reasonably safe condition. *1121 At substantial expense the City maintains parks and public recreational facilities for the benefit and use of its citizens, primarily as players and to a lesser extent as spectators. There was no showing whatsoever that the design and construction of the park failed to meet the normal and reasonable standards of safety. At major league baseball games spectators seated in seats for which they have paid a substantial amount of money can be, and often are, struck by baseballs without any ensuing liability on behalf of the baseball club or ball park owner. The only protected spectator area at such ball parks is generally behind the batter's box which is struck many times during each game by foul tips. Even in the areas behind first and third bases spectators are unprotected and may be struck by overthrows or foul balls both during warm-ups and during the game. I cannot conceive of any reason why the City, which furnishes these recreational facilities and services to persons free of charge, should be held to a much greater degree of care than a professional ball club or ball park which charges a substantial fee for the use of its facilities and admission to its games.
Furthermore, in no way can it be said that there were concealed perils which were or should have been known to the City and which were unknown to the invitee and could not be discovered by him through the exercise of reasonable care. The peril of being hit by a thrown or batted ball was not concealed but was open and very apparent. The peril was not unknown to Broxson since he had seen players warming up for at least a short period prior to his accident and had previously attended other games. Even if Broxson did not have both present and prior knowledge of the condition, it cannot be said that the danger could not have been discovered by him through the exercise of due care. For these reasons, even if Broxson were to be accorded the status of invitee the record fails to show, as a matter of law, a violation of any duty owed him by the City as an invitee. The trial judge should therefore have granted the City's motion for directed verdict.
Another major problem in this case is that the plaintiff sued the City alleging that as landowner the City had a duty to him to exercise reasonable care to maintain its premises in a safe condition. The case was tried on the theory that the City failed to exercise reasonable care to maintain its premises in a safe condition. The jury was instructed that the issue for their determination was whether the City negligently failed to maintain its premises in a reasonably safe condition or negligently failed to correct a dangerous condition of which the City knew or should have known by the use of reasonable care, or negligently failed to warn the plaintiff of a dangerous condition. Assuming the jury followed the instructions of the court, the case was decided on the issue of whether the City failed to maintain its property in a reasonably safe condition, failed to correct a dangerous condition or failed to warn of a dangerous condition. If the condition of the property was the issue to be decided then the status of the individual on the property and the duties owed to that individual were all matters of fact and law that should have been considered. However, in this case there is absolutely no evidence that the condition of the property was in any way connected or related to the injuries sustained by the plaintiff. The plaintiff was injured by activities being conducted on the property of the defendant City by third parties who were not agents, servants or employees of the City. Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967 (Fla. 1977) is cited in the majority opinion as authority for the duty owed by a landowner to an invitee; however, the quoted language relied upon is contained in the dissent. The majority opinion in Maldonado makes it clear that the status of the injured person is relevant only when liability is predicated upon an alleged defective or dangerous condition of the premises. In Maldonado the court, quoting Hix v. Billen, 284 So.2d 209 (Fla. 1973) said:
Where the presence of the injured person is known to the landowner and the injury is caused by the active conduct or affirmative negligence of the landowner as distinguished from the condition of the premises, ordinary negligence is the *1122 measure of care as in other negligence situations. (Emphasis supplied [by the court])
The Maldonado court went on to hold:
[o]nly when liability is predicated upon an alleged defective or dangerous condition of the premises is the injured person's status relevant. Wood [Wood v. Camp, 284 So.2d 691 (Fla. 1973)] controls the liability of a landowner for injuries arising out of a defect in the premises, whereas the standard of ordinary negligence set forth in Hix, 284 So.2d 209 governs the liability of the landowner to a person injured on his property unrelated to any defective condition of the premises.
351 So.2d at 968. All of the remaining cases cited by the majority involved a defective condition of property and they stand only for the proposition that an action may be brought seeking recovery for injuries sustained as a result of a defective condition of property. In the instant case, Broxson's status as an invitee is not relevant, and the case should have been resolved as a standard negligence action without the City's liability being governed by a special duty dependent upon Broxson's "status." Id. at n. 2.
The instant case was tried and decided on the wrong theory of negligence and was tried and decided on the wrong degree of duty owed the plaintiff by the City. In either event the judgment should be reversed.
NOTES
[1] Although denial of a motion for summary judgment may be reviewable after disposition of the case by final judgment, Peninsular Fire Insurance Co. v. Wells, 438 So.2d 46, 49 n. 3 (Fla. 1st DCA 1983), the obvious thrust of appellant's appeal is directed at the trial court's denial of the motions for directed verdict. Moreover, appellant has not included in the record the deposition testimony upon which the appellant apparently relied in the trial court.
[2] There was testimony that a City employee, who was responsible for operations and maintenance of the park, on occasion "ran off" players who, while warming up, struck the concession stand as well as people.
[3] We cite Stewart only for the legal principles explicated in the quoted portion of the opinion. We do not wish to be understood as saying that we would have necessarily reached the same result as did the Fourth District under the facts of that case.
[4] It has been suggested that "[e]xamples of these functions include the rendering of specific medical services, and the supervision of school activities and playground and recreational activities." Morrison, Sovereign Immunity, Vol. 60, no. 4, Fla.Bar Jour., p. 41 (1986).
[5] Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
[6] Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982); Ingham v. State Department of Transportation, 419 So.2d 1081 (Fla. 1982); and City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982).