GUNTHER, J.
The City of Coral Springs (“City”) appeals a final judgment resulting in a damage award of $130,000 in favor of Herbert and Helene Rippe (“Rippes”). We affirm in all respects and write only to address the denial of the City’s motion for a directed verdict.
The Rippes were attending a Little League game at Mullins Park, a multi-recreational facility owned and operated by the City. The chain link fence surrounding the baseball field is eight feet high behind home plate, while the remainder of the fence, including the area in front of the players’ benches, is four feet high. Bleachers for spectator seating is provided behind the eight feet sections of the fence.
Helene was watching her son play in a Little League game from the bleachers. For a better view of the game, she moved in front of the players’ bench, where the fence is only four feet high. Helene was struck with a foul ball, knocked unconscious, and suffered injuries. The Rippes sued and alleged negligence against the City. It is clear that throughout the trial the issue of the City’s alleged negligence was related to the height of the fence. The jury concluded that Helene was 60% at fault and the City was 40% at fault. A final judgment of $130,000 was entered in favor of the Rippes.
The jury’s verdict was based upon the following negligence instruction,
The issues for your determination on the claim of HELENE RIPPE against the CITY OF CORAL SPRINGS are whether the CITY OF CORAL SPRINGS negligently failed to correct a dangerous condition of which the CITY OF CORAL SPRINGS either knew or should have known by the use of reasonable care, or negligently failed to warn HELENE RIPPE of a dangerous condition concerning which the CITY OF CORAL SPRINGS had, or should have had, knowledge greater than that of HELENE RIPPE and, .if so, whether such negligence was a legal cause of loss, injury, or damage sustained by HELENE RIPPE.
Arguing the trial court erred in denying its motion for a directed verdict, the City raises two contentions on appeal. First, the City maintains the purported basis for liability was the negligent design of the *63 baseball field, a discretionary or planning-level decision generally protected by sovereign immunity. In the alternative, the City argues that the Rippes did not establish a prima facie negligence case because they failed to present any evidence of the City’s actual or constructive knowledge of a dangerous condition.
Regarding the City’s sovereign immunity argument, the Rippes counter that planning-level decisions which create a known dangerous condition result in an operational-level duty to warn of or correct the dangerous condition, and operational-level activities are not protected by sovereign immunity. Further, the Rippes assert the evidence of the City’s knowledge of the dangerous condition was sufficient to present a factual issue for the jury.
“Generally, within the realm of sovereign immunity, the discretionary, judgmental, planning-level decisions of a governmental entity are immune from suit, while operational decisions are not.” Cygler v. Presjack, 667 So.2d 458, 460 (Fla. 4th DCA 1996). However, if the planning-level decision of a governmental entity creates a known dangerous condition, the governmental entity then has an operational-level duty to either warn of or correct the danger. See Department of Transp. v. Neilson, 419 So.2d 1071, 1078 (Fla.1982); City of St. Petersburg v. Collom, 419 So.2d 1082, 1086 (Fla.1982).
In the present case, applying the negligence instruction as given, the jury concluded that the City either negligently failed to warn of or correct a known dangerous condition. If there was sufficient evidence to submit either issue to the jury, the City was not entitled to a directed verdict nor was sovereign immunity a bar to recovery. On the other hand, if the evidence presented was insufficient, the City was entitled to a directed verdict based upon the sufficiency of the evidence regardless of the sovereign immunity issue. Therefore, it is unnecessary to address the issue of sovereign immunity in this appeal; rather we must decide whether the Rippes presented sufficient evidence to withstand a directed verdict based upon the negligence instruction submitted to the jury-
Regarding the sufficiency of the evidence, the City argues that there was no evidence of the City’s knowledge of the alleged dangerous condition nor evidence of prior similar incidents presented, and without evidence of actual or constructive knowledge a duty to correct or warn does not arise. Further, the City contends that the Rippes failed to present any competent evidence which could have allowed the jury to conclude the City’s knowledge of the condition was superior to Helene’s.
In response, the Rippes contend that it is common knowledge that a batted ball could easily fly over a four foot fence. In addition, the Rippes argue that a previous tragedy is not a prerequisite to notice that a hazardous activity exists. Further, they maintain that the testimony indicated the City was fully aware of the possibility that a spectator standing behind the four foot fence could be hit with a batted baseball.
The Rippes rely upon the testimony of the park recreation manager to establish the City’s knowledge of the dangerous condition, which would create a duty to warn or correct. The recreation manager testified that he did not have any knowledge of any prior similar incidents. In addition, the recreation manager testified,
Q: Were you aware of the situations prior to this accident, you and members of the staff in the parks and recreation department, that parents had a tendency to view the game by looking over the four-foot fence?
A: It’s not what we had — it’s not the intention of the field to have people standing by the four-foot fence. I’m not sure that anyone would have come up and said don’t do that. I think the assumption is that we provide the bleachers behind a safe area, and if that somebody does stand by the four-foot fence, that they’re watching the game *64 and that they assume some risk of paying attention to the game that they’re watching at what’s going on.
This is the only evidence relied upon by the Rippes to establish the City’s knowledge of the dangerous condition.
When considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the non-moving party, and if there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper. See Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47, 61 (Fla. 4th DCA 1994). “A trial court may direct a verdict against a plaintiff only if no evidence is introduced on which the jury may lawfully find for the plaintiff.” Id. (quoting Amoroso v. Samuel Friedland Family Enters., 604 So.2d 827, 831 (Fla. 4th DCA 1992)). As such, it was proper for the trial court to deny the City’s motion for a directed verdict and submit the case to the jury if there was any evidence to support a verdict for the Rippes.
Both parties rely upon City of Milton v. Broxson, 514 So.2d 1116 (Fla. 1st DCA 1987), wherein the city owned and operated a softball field, an area to warm up was not designated, the players for the upcoming game were warming up near the spectators, and the plaintiff was struck and injured by a softball as a result. See id. at 1117. There was evidence that there was •not a designated warm up area, it was common practice for players to warm up near the spectators, and that spectators had been injured in the past. See id.
The court, in Broxson, discussed the two possible duties the city, as a landowner, owed to the spectators, i.e., (1) the duty to use reasonable care in maintaining the premises in a reasonably safe condition, and (2) the duty to warn of concealed dangers. See id. at 1118. Regarding the duty to warn, the court provided that “a prerequisite to such duty is that the defendant’s knowledge of the danger must be superior to that of' the business invitee.” Id. Because the city did not have knowledge of the condition superior to the spectators, the city did not have a duty to warn. See id.
However, according to the Broxson court, the city also had a duty to invitees to maintain the premises in a reasonably safe condition, including the elimination of dangerous conditions of which the city had actual or constructive knowledge. See id. The Broxson court concluded that, based upon the evidence, the jury could have determined that the city did have a duty to maintain the premises in a reasonably safe condition, despite the obviousness of the danger, because the city should have anticipated that such a hazardous activity would cause spectator injury notwithstanding the spectators’ knowledge of the danger. See id. at 1119.
In the present case, the City’s liability is based upon either: (1) its failure to warn the Rippes of a known dangerous condition; or (2) its failure to correct a known dangerous condition. The Rippes acknowledge that the danger of fly balls is common knowledge, and thereby essentially concede the City does not have a duty to warn of the condition. See id. at 1118. Notwithstanding the Rippes’ concession that the condition was obvious, the City could be liable for failing to correct a known dangerous condition, provided the City should have anticipated spectator injury despite the obviousness of the danger. See id. As explained in the Restatement (Second) of Torts, section 343A, comment f,
there are situations in which the landowner can and should foresee that the dangerous condition will cause harm to an invitee despite its known or obvious danger. A reasonable probability to expect harm to an invitee from known and obvious dangers may arise under the following circumstances: If a landowner may expect that the invitee’s attention might be distracted, so that he or she will not discover what is obvious, or will forget such discovery, or fail to protect *65 himself or herself against it, and if the landowner may expect that the invitee will encounter the known or obvious danger, because, to a reasonable person, the advantages of such encounters would outweigh the apparent risk.
Ahl v. Stone Southwest, Inc., 666 So.2d 922, 924 (Fla. 1st DCA 1995)(quoting Restatement (Second) of Torts, § 343A, comment f).
The City contends that in the present case, unlike Broxson, there is no evidence of prior similar incidents nor of the City’s knowledge of a dangerous condition to permit the issue to go to the jury. In Brox-son, the evidence of prior similar incidents was relevant to establish knowledge of the dangerous condition. Although there is no evidence of prior similar incidents in the present case, the jury could have inferred the City had knowledge that the height of the fence created a dangerous condition based upon the park recreation manager’s testimony that the bleachers were provided in a safe area behind the eight foot fence. In addition, based upon this testimony, the jury could have concluded that the City should have and did expect that parents would choose to stand in front of the four foot fence rather than sit on the bleachers in a safer area. Further, it is reasonable to conclude that the City should have expected a Little League spectator’s attention might become distracted, so that he or she would not discover, forget such a discovery, or fail to protect himself or herself from the obvious risk of being struck by a foul ball batted over a four foot fence. Moreover, it is foreseeable that parents may decide the advantage of positioning themselves behind the four foot fence for a better view of the game outweighs the apparent risk of being struck by a foul ball.
Therefore, the Rippes did present evidence upon which the jury could have inferred the City had knowledge of the dangerous condition. Further, it is reasonably foreseeable that a Little League spectator could be injured despite the obviousness of the danger. Thus, based upon the evidence presented, viewed in the light most favorable to the Rippes, the jury could have concluded the City negligently failed to correct a known dangerous condition.
In sum, we conclude there was evidence of the City’s knowledge to preclude a directed verdict. Furthermore, the finding of negligence was based upon the City’s failure to correct a known dangerous condition, which is an operational function not protected by sovereign immunity. Accordingly, we affirm.
AFFIRMED.
SHAHOOD and TAYLOR, JJ., concur.