581 So.2d 1345 (1991)
Regala DENNIS, Appellant,
v.
CITY OF TAMPA, Appellee.
No. 90-01875.
District Court of Appeal of Florida, Second District.
May 29, 1991.
Certification Denied July 18, 1991.
*1346 Paul A. Nelson and Kimberly J. Lee of Paul A. Nelson, P.A., Tampa, for appellant.
Pamela K. Akin, City Atty. and Tyron Brown, Asst. City Atty., Tampa, for appellee.
ALTENBERND, Judge.
Regala Dennis, the plaintiff, appeals a final summary judgment in favor of the City of Tampa in her personal injury action. She was injured when she was struck from behind by a passing bicyclist while she was walking in a municipal park. We affirm the summary judgment because the record establishes no breach of any standard of care owed by the City to a park patron. Specifically, we hold that the City had no obligation to supervise a few adults during their personal exercise activities at a public park.
*1347 On Monday, January 20, 1986, Ms. Dennis took a vacation day from her job as a computer technician. In the afternoon, she decided to go for a walk on a path at Horizon Park in Tampa, Florida. She had walked on this path approximately twenty-five times in the preceding two months. She was aware that the path was used by walkers, joggers, and bicyclists. She testified in her deposition that she had been walking for only a short distance on the edge of the path when she was struck from behind by a bicyclist, James Dublin. Ms. Dennis sustained significant injuries.
Mr. Dublin was a twenty-six-year-old student at Hillsborough Community College. He had been riding his ten-speed touring bicycle at the park for approximately ninety minutes prior to this accident. He explained that he saw Ms. Dennis walking on the edge of the path in front of him. He lowered his head because he was fatigued, and the next thing he remembered was striking Ms. Dennis.
Ms. Dennis sued the City on the theory that her injuries were caused in whole or in part by the City's failure to prevent Mr. Dublin from riding his bicycle at an allegedly high rate of speed on the path. Her second amended complaint states that the Tampa Police Department had assigned a police officer as a park ranger to enforce various rules, laws, and ordinances at Horizon Park. The City had posted a speed limit of ten miles per hour applicable to bicycles inside the park. The complaint alleges that the City was negligent because it did not enforce the bicycle speed limit on a regular basis and because it did not enforce the speed limit on this particular occasion. The complaint further alleges that the City was negligent because it had assigned only one officer to this park and because he was off duty on Mondays. Following discovery, the trial court concluded that Ms. Dennis' claim was based on a duty to enforce the law and granted summary judgment under the general rule that a law enforcement officer owes no legal duty to prevent a plaintiff's injuries by arresting a third person or by otherwise enforcing the law. Everton v. Willard, 468 So.2d 936 (Fla. 1985).
On appeal, Ms. Dennis forcefully argues that this case is not controlled by Everton. She maintains that the park ranger's alleged obligation to enforce the bicycle speed limit involves a duty to provide supervision of park patrons as an operational aspect of providing general services. She correctly observes that a governmental unit which chooses to operate a swimming pool in a park may have an operational duty to provide reasonable supervision of the pool. Avallone v. Board of County Comm'rs of Citrus County, 493 So.2d 1002 (Fla. 1986). Likewise, a city may have a premises-related duty to protect spectators at a softball diamond during scheduled games. City of Milton v. Broxson, 514 So.2d 1116 (Fla. 1st DCA 1987), review dismissed, 537 So.2d 568 (Fla. 1988). Although we believe this is a close legal issue and that Everton is not fully dispositive of this case, we agree with the trial court that no actionable standard of care existed on the part of the City to protect Ms. Dennis from this type of injury in this case.
Under the analysis in Trianon Park Condominium v. City of Hialeah, 468 So.2d 912 (Fla. 1985), we must first decide whether this case involves a governmental function that creates a common law duty to an individual. If so, we must next decide whether that duty is subject to litigation under the waiver of sovereign immunity. § 768.28, Fla. Stat.(1989). The supreme court in Trianon Park attempted to clarify Florida's confusing concepts of governmental tort liability by dividing governmental functions into four categories:
I. Legislative, permitting, licensing, and executive officer functions;
II. Enforcement of laws and protection of the public safety;
III. Capital improvement and property control functions; and
IV. Providing professional, educational, and general services.
As summarized in Trianon Park, discretionary functions contained in categories I and II do not create duties to specific *1348 persons under the common law.[1] Thus, those discretionary functions are not actionable without regard to the defense of sovereign immunity. Categories III and IV, on the other hand, involve many functions that create common law duties. The defense of sovereign immunity has been waived by the legislature for those category III and IV duties which involve operational decisions, as compared to policy-making decisions, under the test described in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
An established city park seems to involve functions in categories II, III, and IV, as the following discussion illustrates.

CATEGORY II
It is apparent that various governmental employees enforce laws and protect public safety under category II inside parks as well as at other locations. We agree with the trial court that the enforcement of a speed limit is such a function. Under Everton, that function creates no actionable duty under the common law, whether the location for enforcement is or is not owned by a governmental agency. Likewise, the decision not to station police in the park on Mondays is not actionable. Wong v. City of Miami, 237 So.2d 132 (Fla. 1970). This case does not involve a category II function which creates a common law duty.

CATEGORY III
The decision to build an exercise path and the obligation to maintain it would appear to be category III functions involving capital improvements and property control. After a path is constructed, a city owes a duty to use reasonable care to maintain it and to warn invitees of concealed perils. Broxson. In this case, Ms. Dennis did not allege that the accident occurred because of a defect in the path or because of a failure to warn. Cf. Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983). Photographs in the record demonstrate that the path in the vicinity of the accident was a well-maintained, asphalt path that was wide enough to permit walkers and bicyclists to use the path side-by-side. Ms. Dennis had actual knowledge that bicyclists used this path from her prior use of the path. The City had posted speed limits that applied to bicyclists. Thus, this case presents no issue under a category III duty.

CATEGORY IV
The standards of care owing under any common law duty within the general services concept of category IV are not entirely clear. The First District has concluded that certain functions in parks are category IV general services creating common law duties not protected by the defense of sovereign immunity. Broxson. At least in some circumstances, the supreme court has recognized that a city has a duty to provide supervision for the benefit of invitees at recreational areas in parks. Avallone. Although we are inclined to believe that any such duty is derived from common law concepts of premises liability and, thus, might be appropriately described as a property control function under category III, we discuss any governmental duty to supervise the activities of visitors in a park within this section of the opinion.
General services involve many functions which are foreign to the private sector. As a result, general services present a difficult area in which to assess governmental tort liability. It is now well established, however, that section 768.28, Florida Statutes (1989), does not create new duties owing by the government, but rather permits recovery under duties the government would owe if it were a "private person." Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989); Trianon. Thus, any governmental duty to supervise potentially negligent conduct of visitors in a park must be derived from a comparable duty in the private sector.
Although Florida's courts have recognized that a landowner's relationship with persons entering the property creates *1349 a duty which may require people in the private sector to supervise the potentially negligent conduct of third parties, the standard of care owing under that duty has been quite limited. Generally, the standard of care requires only some reasonable response from a possessor of land who has actual or constructive knowledge of a third person's dangerous conduct. See, e.g., Jones v. Dowdy, 443 So.2d 467 (Fla. 2d DCA 1984); Elmore v. Sones, 140 So.2d 59 (Fla. 2d DCA 1962); Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985), review denied, 482 So.2d 350 (Fla. 1986); Hilgenhurst v. Knight-Ridder Newspaper, Inc., 400 So.2d 523 (Fla. 3d DCA), review denied, 411 So.2d 382 (Fla. 1981); Warner v. Florida Jai Alai, Inc., 221 So.2d 777 (Fla. 4th DCA 1969), cert. discharged, 235 So.2d 294 (Fla. 1970); see generally 41 Fla.Jur.2d Premises Liability § 23 (1983).
At least historically, the law recognized a higher standard of care for "places of amusement" than for other places in which invitees congregated. Panoz v. Gulf & Bay Corp. of Sarasota, 208 So.2d 297 (Fla. 2d DCA), cert. denied, 218 So.2d 166 (Fla. 1968).[2] In Panoz, we recognized that swimming areas were treated as places of amusement, but we declined to treat golf courses in a like manner. We noted that places of amusement are typically locations in which "a large number of paying patrons [are] congregated in a relatively limited area" to engage in an activity which could be dangerous if unsupervised. Id. at 300.
The limited standard of care placed upon private landowners to supervise the potentially negligent conduct of third persons causes us to conclude that the obligation to supervise described in Avallone should not be applied universally to all areas in public parks. When the governmental subdivision sponsors or schedules an unusually dangerous activity at a park or has reason to anticipate a crowd so large that a private landowner would be obligated to provide supervision under like circumstances, the standard of care required of a governmental subdivision may create a jury question. On the other hand, typical recreational activity during low-use hours, without some additional risk factor, does not create a jury question concerning the governmental subdivision's standard of care. A case should not be submitted to a jury merely because an accident in a public park might have been prevented if more tax dollars had been spent on greater supervision. This analysis is not based on the defense of sovereign immunity, but rather on the scope of the standard of care owed by a governmental subdivision under any duty to supervise public facilities.[3]
A clear analysis of the function of the trial judge and the jury in defining standard of care is often difficult in negligence cases. See Cassel v. Price, 396 So.2d 258 (Fla. 1st DCA), review denied, 407 So.2d 1102 (Fla. 1981). Nevertheless, such an analysis frequently determines whether a summary judgment can be affirmed *1350 or must be reversed. On one hand, we remind trial courts that "negligence" is typically a jury issue. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). Even on undisputed facts, if there is an "inference" of negligence, we require a jury trial. Booth v. Mary Carter Paint Co., 182 So.2d 292 (Fla. 2d DCA 1966). On the other hand, there are numerous cases holding that summary judgment is appropriate in a given case because the defendant owes "no duty," Saga Bay Property Owners Ass'n v. Askew, 513 So.2d 691 (Fla. 3d DCA 1987), review denied, 525 So.2d 876 (Fla. 1988), is not "an insurer," Haynes v. Lloyd, 533 So.2d 944 (Fla. 5th DCA 1988); see also Elmore, or is not legally responsible for a "mere accident," see Meyer By and Through Meyer v. Torrey, 452 So.2d 672 (Fla. 2d DCA 1984); see also East Bay Raceway v. Parham, 497 So.2d 719 (Fla. 2d DCA 1986). In most of these cases, the relationship between the plaintiff and the defendant is such that the defendant has some legal obligation to look out for the plaintiff's safety, i.e., the defendant owes a "duty." The more difficult question is, What actions must the defendant perform or avoid under the duty to prevent an injury to the plaintiff, i.e., what is the defendant's standard of care? W. Prosser, Law of Torts § 37 (4th ed. 1971).
We recognize that the specific standard of care owing under a duty typically involves a factual question which must be submitted to a jury. Spadafora v. Carlo, 569 So.2d 1329 (Fla. 2d DCA 1990); see also Bryant v. Lucky Stores, Inc., 570 So.2d 950 (Fla.2d DCA 1990). Since the City clearly owed some common law duty to invitees who entered the park, Ms. Dennis argues that whether supervision was required and the degree of that supervision are issues involving the specific standard of care and must be resolved by jurors rather than jurists. We disagree for two reasons.
First, a trial judge is authorized to determine the standard of care as a matter of law under undisputed facts in those rare cases in which the movant carries its heavy burden of proof and convinces the judge that no reasonable jury could decide in favor of the plaintiff on the disputed standard of care. Meyer; Cassel. Whether a court calls the event a "mere accident," or describes the plaintiff's proposed standard of care as that of an "insurer," it is effectively holding that no jury, even under the inferences of fact, could reasonably determine that the defendant owed a standard of care under which the plaintiff could prevail.
We are convinced that no reasonable jury could find that the City is obligated to pay for supervision of park patrons engaged in typical recreational activities in order to prevent negligent conduct during low-use hours or in areas that are not expected to attract crowds. Although juries might reasonably disagree about the specific standard of care owing to children or adults at swimming pools and other premises expected to attract large crowds engaged in potentially dangerous activity, this case does not present such a circumstance.[4]
Second, there are limited occasions when strong factors of public policy permit a trial judge to determine the specific standard of care under undisputed facts.[5] Normally, the public policies which permit a *1351 judge to determine the standard of care at summary judgment are also reasons which would be equally convincing to a jury. On the other hand, one could forcefully argue that occasionally the appellate courts have given greater authority to trial judges to determine the specific standard of care because of valid concerns that reasonable juries could render diverse, unpredictable verdicts in isolated cases and thereby cause unacceptable social or economic response in the community as a whole.
For example, the supreme court clearly relied on such public policies to declare that a police officer's duty to the motoring public did not include a standard of care under which the police officer was obligated to arrest third persons who were guilty of drunk driving. Everton. The supreme court made that decision after a presumably reasonable jury had reached an opposite conclusion. Duvall v. City of Cape Coral, 468 So.2d 961 (Fla. 1985). Likewise, the supreme court apparently relied on such overriding public policies to declare that a homeowner has no duty to modify or warn of a step-down, even though reasonable juries might disagree in some cases. See Schoen v. Gilbert, 436 So.2d 75 (Fla. 1983).[6] Obviously, when a court determines a specific standard of care at summary judgment for such reasons of public policy, there is a risk that its decision may conflict with the result a party might receive through trial by jury. Thus, this power should be quite cautiously employed. Precedent can be better created and evaluated if courts openly discuss the public policies which affect such decisions rather than concealing those factors in abbreviated legal phrases.
When a city council or a county commission decides to allocate scarce public resources for a park or similar public facility, this discretionary, policy-making decision is clearly affected by the amount of liability that the city or county may incur for subsequent operational activities at the park. The budget for a park would be dramatically higher if the government were required to provide constant supervision of the activities of third parties occurring in all sections of the park at all times of the day. This is particularly true when the park includes lengthy trails for walking and biking. While the courts have every reason to require cities and counties to operate reasonably safe parks, we have no desire to discourage the development of parks by imposing unrealistic or unpredictable duties. In order to encourage outdoor recreation, the legislature has limited the standard of care of private persons who open land to public use. § 375.251, Fla. Stat. (1989). Although this statutory protection does not extend to the City, Chapman v. Pinellas County, 423 So.2d 578 (Fla.2d DCA 1982), we would clearly discourage public outdoor recreation facilities if we approved the plaintiff's suggested broad, unpredictable standard of care in cases against governmental subdivisions. Such considerations provide a public policy to justify greater judicial involvement in determining specific standards of care in this area of governmental tort liability than in other areas of tort liability.
Thus, although we believe that Everton is not fully dispositive of this case, we affirm. Under the undisputed facts of this case, any duty which the City owed to Ms. Dennis did not, as a matter of law, include a specific standard of care under which Ms. Dennis could recover.
Affirmed.
THREADGILL, A.C.J., and PARKER, J., concur.
NOTES
[1] Not all functions under categories I and II are discretionary, but this case does not require consideration of those additional functions. See Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989).
[2] Panoz was decided prior to Post v. Lunney, 261 So.2d 146 (Fla. 1972), and Wood v. Camp, 284 So.2d 691 (Fla. 1973). It could be persuasively argued that a place of amusement is now subject to the same general standard of care for invitees as any other premise, but that the "circumstances" considered in establishing the specific standard of care require greater care by the landowner.
[3] In Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3d DCA 1980), the Third District held that sovereign immunity barred an action against a city concerning the duty to provide supervision at a park late at night. In that case, the plaintiff was a child who was hit by a piece of copper coil that had been thrown by another child in the absence of any supervision. In Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985), this court held that sovereign immunity barred an action against a county that provided no supervision for children swimming at a public beach. These two decisions were disapproved in Avallone v. Board of County Comm'rs of Citrus County, 493 So.2d 1002 (Fla. 1986), "to the extent they conflict with the decision here." Id. at 1005. Those decisions conflict with Avallone primarily in their discussion of sovereign immunity and their failure to first consider the issue of the relevant duty and the standard of care owing by the government under that duty. Thus, although the outcome in this case is similar to the outcome in Jenkins, the rule of law announced in this case is distinctly different from the rule in Jenkins that the supreme court disapproved.
[4] We note that this case addresses a standard of care concerning supervision of activities of third persons which may result in negligent injury. It does not involve any issue concerning the obligation to protect citizens from criminal misconduct by third persons. Cf. District Bd. of Trustees of Miami Dade Community College v. M.H., 578 So.2d 8 (Fla.3d DCA 1991).
[5] The discussion of this problem by Oliver Wendell Holmes, Jr., in The Common Law is instructive from a historical perspective.

When a case arises in which the standard of conduct, pure and simple, is submitted to the jury, the explanation is plain. It is that the court, not entertaining any clear views of public policy applicable to the matter, derives the rule to be applied from daily experience, as it has been agreed that the great body of the law of tort has been derived. But the court further feels that it is not itself possessed of sufficient practical experience to lay down the rule intelligently.
O.W. Holmes, Jr., The Common Law 98 (M. Howe ed. 1963). See also W. Prosser, Law of Torts § 37 (4th ed. 1971).
[6] By comparison, the supreme court has relied on such public policies to create a general standard of care under which juries may decide that a school has an obligation to supervise students during school-sponsored, extracurricular activities that occur off the school premises. Rupp v. Bryant, 417 So.2d 658 (Fla. 1982).