656 So.2d 173 (1995)
Parimal BUTALA, Appellant,
v.
AUTOMATED PETROLEUM AND ENERGY COMPANY, INC., a Florida corporation, Appellee.
No. 94-00250.
District Court of Appeal of Florida, Second District.
April 7, 1995.
Rehearing Denied June 8, 1995.
*174 Michael J. Kohl, Beltz, Ruth & Newman, P.A., St. Petersburg, for appellant.
Michael S. Rywant and Jill M. Deziel, Rywant, Alvarez, Jones & Russo, P.A., Tampa, for appellee.
ALTENBERND, Judge.
Parimal Butala appeals an order dismissing his personal injury complaint with prejudice. Despite some similarity between this case and Roberts v. Shop & Go, Inc., 502 So.2d 915 (Fla. 2d DCA 1986), review denied, 513 So.2d 1063 (Fla. 1987), we reverse and remand for further proceedings. The amended complaint adequately states a cause of action in negligence for injuries occurring on the defendant's premises when the defendant's gasoline caught fire during an altercation initiated by a third person.
Mr. Butala's amended complaint alleges that on March 30, 1992, he was a customer at the defendant's self-service gasoline station on Hillsborough Avenue in Tampa, Florida. While on the premises, he was confronted by Halbert Pogue. The pleadings do not expressly state that Mr. Pogue was another customer, but do allege that he was a third party known by an employee of the defendant. The amended complaint explains that the defendant's employee knew Mr. Pogue was in a "foul mood" at the time of the incident.
The nature and extent of the confrontation between Mr. Pogue and Mr. Butala are not alleged in detail. Nevertheless, the allegations indicate the altercation was of sufficient duration and intensity that the defendant's employee dialed 911 for emergency assistance. Apparently, the employee took no other action to stop the fight or otherwise protect Mr. Butala. Before the police arrived, Mr. Pogue dispensed gasoline into an unauthorized container, threw it on Mr. Butala, and set him on fire. The plaintiff's amended complaint emphasizes that the employee failed to trip the emergency switch that would have shut off the gasoline pumps.
The trial court dismissed this negligence action with prejudice, primarily because of the similarities between these allegations and those in the well-known Roberts case. In Roberts, Billy Ferry obtained gasoline from the Shop & Go in an unauthorized container and carried the container to a nearby Winn *175 Dixie grocery store. He entered the store and threw the gasoline on customers and employees. The resulting fire killed several people and seriously injured several others.[1] The detailed allegations in the Roberts complaints explained the extent of Billy Ferry's mental problems and his fascination with fire. The complaints alleged that the employee at the Shop & Go was aware of Billy Ferry's pyromania. Over the strong dissent of Associate Judge Patterson, this court held in 1986 that Mr. Ferry's criminal behavior was unforeseeable as a matter of law.
We conclude that Roberts is distinguishable for several reasons. First, there is a significant procedural difference between the two cases. The facts surrounding Billy Ferry's crime were well publicized and thoroughly investigated. As a result, the plaintiffs in Roberts were able to allege the facts of the incident in great detail. As our opinion reflects, the complaints in Roberts alleged quotations from the anticipated testimony of the store clerk and many detailed facts not normally alleged within a complaint. Thus, the dismissal of the complaints in Roberts is more akin to a summary judgment than to a dismissal on the pleadings. Once the facts in this case have been developed to the extent that they were developed in Roberts, it is possible that the defendant will be entitled to a summary judgment on at least some of the plaintiff's theories. At this point, we need only hold that Mr. Butala's amended complaint alleges a cause of action.
Second, the source of the defendant's duty and the general standard of care arising from that duty are different in this case than in Roberts. Mr. Butala was on the defendant's premises as a customer at the time of this occurrence. The victims in Roberts were not in a store owned or operated by the defendant. Unlike the circumstances in Roberts, the defendant's duty and resulting standard of care in this case are those owed by a landowner to an invitee.
Under a premises liability theory, there is no question that the relationship between the defendant and Mr. Butala, as a patron of its self-service gasoline station, creates a duty of reasonable care. The more difficult question is whether that duty, as a matter of law, establishes a general standard of care requiring a self-service gasoline station owner to take reasonable steps to protect patrons from on-premises gasoline fires that may result from the unsupervised use of its pumps. See Dennis v. City of Tampa, 581 So.2d 1345 (Fla. 2d DCA), review denied, 591 So.2d 181 (Fla. 1991); Spadafora v. Carlo, 569 So.2d 1329 (Fla. 2d DCA 1990). If the judiciary may properly impose such a general standard of care, then the specific conduct owed by this defendant at the time of the accident, i.e., the specific standard of care, is probably a question that must be resolved by a jury. For the reasons discussed hereafter, we conclude that the duty owed by a gasoline station with self-service pumps does include such a general standard of care.
Billy Ferry purchased his gasoline before he left Shop & Go's premises. Although it may have been unwise for Shop & Go to sell him the gasoline, legally, the gasoline was no longer owned by or in the control of Shop & Go at the time Billy Ferry ignited it. In this case, the gasoline belonged to the defendant. It was still in its care and on its premises when it was misused. Despite the flammability of gasoline, Florida law has not imposed strict liability upon the owner of a service station for distribution of gasoline, and the courts have not treated gasoline as a dangerous instrumentality comparable to an automobile.[2] We announce no such rule in this case. But under an examination of "all the circumstances" for purposes of the simple negligence standard, the ordinary reasonable retailer should logically give more fore-thought *176 to the risks arising from its gasoline, than from its less-flammable liquids. Cf. Westchester Exxon v. Valdes, 524 So.2d 452 (Fla. 3d DCA 1988) (service station not liable to customer for burns caused by hot water from self-service customer's radiator).
Our decision in Roberts preceded the supreme court's opinion in McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). The discussion in McCain clarifies the use of foreseeability both by the judiciary when defining a defendant's general standard of care and by the jury in determining specific standard of care. The earlier analysis in Roberts may not be entirely consistent with the analysis in McCain.
In McCain, the supreme court attempted to clarify the confusing role of foreseeability in the analysis of duty and proximate causation. See generally W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 42 (5th ed. 1984). It emphasized that there is more than one concept of foreseeability involved in the analysis of a complex tort case. In the judicial analysis of duty, foreseeability involves an assessment of the likelihood of a general threat of harm arising out of an activity. The supreme court characterized this type of foreseeability as the "zone of risk." McCain, 593 So.2d at 502. This test of foreseeability is a minimal legal threshold intended to place modest judicial control on access to the courts in tort cases. This type of "[f]oreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. at 503.
Using this zone of risk to determine the general standard of care owed by a defendant in this case, the judiciary must decide only whether a general threat of harm to a customer arises when the customer is expected to pump his or her own gasoline at pumps that are easily accessible to other customers, without regard to their age, training, or state of mind. That a zone of risk is created by this human endeavor is difficult to deny.[3]
By contrast, there are specific factual issues of foreseeability that arise once the courthouse doors are open. These factual issues are frequently clumped together and described as the foreseeability prong of proximate causation. See Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983). It is important to understand, however, that the difficult factual question of foreseeability for the jury in most cases is not whether it was foreseeable that injury would be caused by the act of negligence, but rather whether the defendant's act was negligent because the specific event causing harm was sufficiently foreseeable that the defendant reasonably needed to take steps to avoid or prevent the event. Thus, this narrow issue of foreseeability must be resolved by the jury in determining the specific standard of care owed by the defendant under all the circumstances, not in determining whether a breach of that specific standard of care caused damage.[4]See Dennis, 581 So.2d 1345. "In this context, foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created." McCain, 593 So.2d at 503.[5]
*177 A jury in this case could decide, on the basis of the evidence, that a predictable or foreseeable specific risk of accident exists when an unsupervised gasoline pump is left in operable condition during an altercation between customers. The jury could decide this risk was high enough that the defendant needed to turn off the pumps or provide some alternative supervision. This analysis was not performed in Roberts because Billy Ferry was not involved in an ongoing fight on the premises where he purchased the gasoline.
In comparison to the preceding analysis of the defendant's duty and standard of care in Mr. Butala's case, the plaintiffs in Roberts needed to prove that Shop & Go could reasonably predict Billy Ferry's future criminal behavior off-premises. The plaintiffs had no clear relationship with Shop & Go that would cause Shop & Go to owe them a general duty. Although the law has begun to recognize some circumstances in which a defendant can be liable for the criminal behavior of third persons, there still exists a general rule that one is not responsible for the unexpected criminal behavior of a third person. See Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla. 1984); Stevens v. Jefferson, 436 So.2d 33 (Fla. 1983); Orlando Executive Park v. Robbins, 433 So.2d 491 (Fla. 1983); Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976); Satchwell v. LaQuinta Motor Inns, Inc., 532 So.2d 1348 (Fla. 1st DCA 1988); Fernandez v. Miami Jai-Alai, Inc., 386 So.2d 4 (Fla. 3d DCA 1980); Drake v. Sun Bank & Trust Co. of St. Petersburg, 377 So.2d 1013 (Fla. 2d DCA 1979); Werndli v. Greyhound Corp., Inc., 365 So.2d 177 (Fla. 2d DCA 1978).
The allegations in Mr. Butala's complaint, however, reflect an ongoing fight on the defendant's premises. A retailer's general standard of care may include an obligation to protect a customer from a known ongoing attack. Billy Jack's, 458 So.2d 760; Stevens, 436 So.2d 33; Surat v. Nu-Med Pembroke, Inc., 632 So.2d 1136 (Fla. 4th DCA 1994); Avallone v. Board of County Comm'rs, 497 So.2d 934 (Fla. 5th DCA 1986); Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985), review denied, 482 So.2d 350 (Fla. 1986); Fincher Investigative Agency v. Scott, 394 So.2d 559 (Fla. 3d DCA), review denied, 402 So.2d 609 (Fla. 1981). Whether dialing 911 was the only act required by the retailer's specific standard of care in this case is probably a question that a jury ultimately will need to resolve.
Finally, while the parties have emphasized the criminal nature of Mr. Pogue's actions, the issue of foreseeability for the jury in determining the specific standard of care owed in this case is not necessarily controlled by the fact that Mr. Pogue's conduct was intentional or criminal. It is not even controlled by the fact that fire was the mechanism of injury. In deciding what steps, if any, the gasoline attendant needed to take when this altercation developed and before the fire started, the jury would be free to consider whether there was a foreseeable risk that a fire could occur by accident, as well as on purpose, during the fight. The jury would also be free to consider whether there was a foreseeable risk of injury to Mr. Butala during this altercation from mechanisms other than fire. "[I]t is immaterial that the defendant could not foresee the precise manner in which the injury occurred or its exact extent." McCain, 593 So.2d at 503. If a reasonable attendant would have taken steps to stop the fight because he feared that Mr. Butala could fall and injure himself or because he feared that the known assailant would hit Mr. Butala, the fact that the injury resulted from a gasoline fire may not necessarily absolve the defendant from taking reasonable steps to stop the fight.
For these reasons, we reverse the dismissal of Mr. Butala's complaint, and remand with directions to reinstate the complaint and for further proceedings.
Reversed and remanded with directions.
RYDER, A.C.J., and QUINCE, J., concur.
NOTES
[1] The incident also resulted in Mr. Ferry's conviction for murder. The supreme court reversed his death sentence and he is now serving a life sentence. Ferry v. State, 507 So.2d 1373 (Fla. 1987).
[2] Other uses of natural gas have been subjected to strict liability. See, e.g., Noack v. B.L. Watters, Inc., 410 So.2d 1375 (Fla. 5th DCA 1982) (installation of natural gas lines is inherently dangerous activity); Yommer v. McKenzie, 255 Md. 220, 257 A.2d 138 (Md. 1969) (storage of large quantities of gasoline adjacent to a private residence is subject to strict liability); Hartford Fire Ins. Co. v. Public Serv. Comm'n of Colo., 676 P.2d 25 (Colo. App. 1983) (storage of natural gas, as opposed to distribution, is inherently dangerous activity).
[3] The zone of risk in this "dispensing area" is also recognized by the legislature. § 526.141(4), Fla. Stat. (1991).
[4] Thus, although lawyers discuss this narrow issue as the foreseeability prong of proximate causation, a jury normally weighs this issue of foreseeability in deciding "negligence" under Florida Standard Jury Instruction 4.1, not in deciding "legal cause" under Florida Standard Jury Instruction 5.1. Instruction 5.1 is used to determine whether an element of damage is caused by the accident  not to determine what caused the accident. Only if there is an intervening cause of damage, as described in instruction 5.1(c), does the jury consider the foreseeability of the intervening risk in determining the cause of the damage rather than in determining whether the defendant's conduct was negligent. See Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983)
[5] Only occasionally will the jury be confronted with unusual facts in which they must determine whether the consequences of the accident are so unforeseeable that the defendant should not be held accountable for those consequences. See Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99 (1928); Prosser and Keeton at § 43.