683 So.2d 1161 (1996)
Jane COLLAZOS, as next friend of her minor son, Christopher M. Collazos, Appellant,
v.
The CITY OF WEST MIAMI, Appellee.
No. 96-184.
District Court of Appeal of Florida, Third District.
December 18, 1996.
*1162 Paul Morris, Coral Gables, for appellant.
Johnson, Anselmo, Murdoch, Burke & George, P.A. and Richard H. McDuff, Ft. Lauderdale, for appellee.
Before JORGENSON, GERSTEN and GREEN, JJ.
GREEN, Judge.
This is an appeal from a final judgment entered pursuant to an order granting the City of West Miami's motion for judgment notwithstanding the verdict ("J.N.O.V.") after a jury trial. Although the jury found the City to be 60% liable for the personal injuries sustained by the appellants, the trial court entered final judgment in the City's favor after the court determined that the City owed no duty to appellants as a matter of law. We reverse.
The evidence adduced at trial viewed in the light most favorable to appellants, e.g., Aetna Casualty & Sur. Co. v. Monsanto Co., 487 So.2d 398, 401 (Fla. 1st DCA 1986); Adams v. Fla. East Coast Ry. Co., 179 So.2d 374, 376 (Fla. 3d DCA 1965), reveals that Jane Collazos' four year old son, Christopher, was accidentally struck in the head at a cityowned park by another child who was randomly swinging a baseball bat. Prior to the date of this accident, the City's parks department distributed fliers offering supervised after-school activities at the subject park for a fee.[1] When one of her five children brought the flier home, Mrs. Collazos went to inspect the park to determine whether its facilities were safe for children of tender years. After inspecting the park's facilities, Mrs. Collazos enrolled her children in the after-school activities and paid the requisite fees. Thereafter, Mrs. Collazos took her children to the park on a daily basis and three park employees generally supervised the children in their after-school activities. The park's employees routinely supplied equipment to the children, including baseball bats. One such employee acknowledged that his supervisory duties included preventing the children from swinging bats in a dangerous manner.
On the date of young Christopher's accident, Mrs. Collazos permitted her sister-inlaw, Marena Suarez, to accompany the children to the park. At the time, there were approximately 70-75 children playing in the park, but only two of the three park employees were on hand for supervision.[2] When Christopher was actually hit with the bat, Mrs. Suarez testified that neither of these park employees was actually outside on the park grounds. At the time, Mrs. Suarez herself had walked toward the park's gate to smoke a cigarette, because smoking is prohibited in the park. Mrs. Suarez further testified that she witnessed the accident, and that it happened too quickly for her to warn Christopher of the impending danger.
The appellants sued the City for negligence and claimed, among other things, that the City had breached its duty to properly supervise the children in their after-school activities. The case proceeded to trial before a jury which ultimately found the City to be 60% liable and Mrs. Suarez to be 40% liable. Relying upon Dennis v. City of Tampa, 581 So.2d 1345 (Fla. 2d DCA), rev. denied, 591 So.2d 181 (Fla.1991), the trial court thereafter granted the City's J.N.O.V. motion and entered final judgment on the City's behalf. The court concluded that (1) the City owed no duty of care to appellants as a matter of law and (2) even if such a duty existed, there was no evidence adduced that greater supervision would have prevented Christopher's accident. The appellants urge on appeal that this was error where they produced evidence from which the jury could conclude that the City assumed the duty of supervising the *1163 children in their after-school park activities and the City's breach of that duty caused or contributed to Christopher's accident. We agree.
In Trianon Park Condominium v. City of Hialeah, 468 So.2d 912 (Fla.1985), the supreme court extensively analyzed the scope of governmental tort liability. It based its analysis on five basic principles, two of which are noteworthy for purposes of this appeal. First, the court stated that "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." 468 So.2d at 917. In this regard, the court pointed out that a duty of care had never been imposed against a governmental entity for its exercise of certain judgmental or discretionary governmental functions. Id. (citing Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979)). The second principle recognized by the court was that the sole purpose of the statute waiving sovereign immunity, section 768.28, Florida Statutes,[3] was to waive that immunity which prevented recovery for breaches of existing common law duties of care in the same manner as a private individual under like circumstances: "This effectively means that the identical existing duties for private persons apply to governmental entities." Id.
With these and other principles in mind, the Trianon court then divided governmental functions into four basic categories:
I. "[L]egislative, permitting, licensing, and executive officer functions;"
II. "[E]nforcement of laws and protection of the public safety;"
III. "[C]apital improvement and property control operations;" and
IV. "[P]roviding professional, educational, and general services for the health and welfare of the citizens."
468 So.2d at 919. The court determined that any action or inaction on the part of governmental officials or employees as it relates to their discretionary functions in categories I and II could not give rise to any governmental tort liability "because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care." 468 So.2d at 921; see also Dennis, 581 So.2d at 1347-48. Governmental functions involved in categories III and IV, on the other hand, were found to give rise to governmental liability "because there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed." Trianon Park, 468 So.2d at 921.
The appellants in this case sought to have liability imposed against the City for its alleged negligent performance of a service (i.e., child care supervision), a category IV function. We would agree with the City that, generally speaking, absent some unusually dangerous activity or situation taking place at its parks, it has no common law or statutory duty to supervise children at play. In Dennis, the court stated:
When the governmental subdivision sponsors or schedules an unusually dangerous activity at a park or has reason to anticipate a crowd so large that a private landowner would be obligated to provide supervision... the standard of care required... may create a jury question ... [but] typical recreational activity during low-use hours, without some additional risk factor, does not create a jury question....
Dennis, 581 So.2d at 1349. Thus, absent special circumstances, the City's decision not to provide supervision at its parks would not be actionable.
Here, however, where the City has exercised its discretion to provide adult supervision for children in their after-school park activities,[4] the City must perform this service in a reasonably prudent manner, just as a private individual under like circumstances. Avallone v. Board of County *1164 Commr's, 493 So.2d 1002, 1005 (Fla.1986) (observing that where a county undertakes to operate a swimming facility, it must do so safely); Grace v. City of Miami, 661 So.2d 1232, 1233 (Fla. 3d DCA 1995) (reversing summary judgment and holding that "[o]nce the City undertakes to provide a lunch program for children at a city-owned park, it assumes the duty to operate the program safely"); see also City of Milton v. Broxson, 514 So.2d 1116 (Fla. 1st DCA 1987) (duty to warn about dangerous activities in public parks), rev. dismissed, 537 So.2d 568 (Fla. 1988); Comuntzis v. Pinellas County School Bd., 508 So.2d 750 (Fla. 2d DCA 1987) (duty of school board to supervise students). Based upon the evidence adduced by appellants, we therefore cannot agree that the City had no actionable legal duty in this case.
The trial court apparently concluded otherwise based solely upon the Dennis decision. We find Dennis, however, to be entirely distinguishable from this case. In that case, an adult female was injured in a city-owned park as she walked on a path and was accidentally struck from behind by a bicyclist who was allegedly travelling in excess of the posted rate of speed for bicycles. She sued the City on a theory that her injuries were caused by the City's negligent failure to enforce its posted bicycle speed limit and the City's negligence in assigning only one park ranger to enforce the law, who happened to have been off-duty on a Monday, the day of her accident. The Second District affirmed a summary judgment entered in the City's favor based upon its correct determination, among other things, that the City's decision of whether or not to enforce its posted speed limit in the park is a category II discretionary governmental function for which no actionable duty arose. 581 So.2d at 1348 (citing Everton v. Willard, 468 So.2d 936 (Fla. 1985)). Similarly, the court properly found that the City's decision not to station a law enforcement officer in the park on Mondays to enforce the speed limit is not actionable. Id. We think that the plaintiff's attempt in Dennis to impose a duty upon the City for its discretionary law enforcement functions under category II is certainly a far cry from this case, where the appellants sought to hold the City responsible for the alleged negligent performance of a service under a category IV operational function. For this reason alone, we believe that the court's reliance upon Dennis was misplaced.
Having determined that there was evidence to give rise to an actionable duty on the part of the City in this case, we find that the question of whether reasonable vigilance on the part of the park supervisors could have prevented this accident was clearly one for the jury. E.g., Stirling v. Sapp, 229 So.2d 850, 853 (Fla.1969) ("A jury should determine what is or what is not negligence in a particular case ... or where the facts are such that reasonable persons may fairly arrive at different conclusions.") (citations omitted). A J.N.O.V. motion may be granted only when there is no evidence or inferences to support the opposing party's position. Id. at 852; Cooper Hotel Servs., Inc. v. MacFarland, 662 So.2d 710, 712 (Fla. 2d DCA 1995), rev. denied, 670 So.2d 939 (Fla.1996); United Farm Agency, Inc. v. DKLS, Inc., 560 So.2d 1212, 1213 (Fla. 3d DCA 1990). A trial court may not reweigh the evidence and substitute its judgment for that of the jury. Stirling, 229 So.2d at 852 (quoting Nelson v. Ziegler, 89 So.2d 780 (Fla.1956)). Accordingly, the trial court erred when it effectively overruled the jury's determination on this issue. For all of these reasons, we reverse the final judgment entered in favor of the City and remand with instructions that the jury's verdict be reinstated.
Reversed and remanded with instructions.
NOTES
[1] The City also owned two other parks, but did not offer supervised activities at these locations.
[2] The third employee was on vacation.
[3] Section 768.28(5) makes governmental entities "liable for tort claims in the same manner and to the same extent as a private individual under like circumstances."
[4] For a fee no less.