771 So.2d 12 (2000)
John CUNNINGHAM, as Personal Representative of the Estate of Eric Cunningham Jackson, Deceased, Appellant,
v.
CITY OF DANIA and Broward County Sheriff's Office, Appellees.
Nos. 4D99-3378, 4D99-3379.
District Court of Appeal of Florida, Fourth District.
September 27, 2000.
Mark T. Packo of the Law Offices of Stuart H. Share, P.A., Miami, for appellant.
E. Bruce Johnson and Christine M. Duignan of Johnson, Anselmo, Murdoch, Burke & George, P.A., Fort Lauderdale, for appellee City of Dania.
Bruce W. Jolly of Purdy, Jolly & Giuffreda, P.A., Fort Lauderdale, for appellee Broward County Sheriff's Office.
STEVENSON, J.
This is an appeal from a final order dismissing appellant's wrongful death complaint *13 against the City of Dania and Broward County Sheriff Kenneth Jenne, II, after appellant's son, Eric Cunningham Jackson, was killed in a drive-by shooting at a public park in Dania. The trial court dismissed the complaint for failure to state a cause of action on sovereign immunity grounds. We affirm as to the Sheriff, but reverse as to the City of Dania.
The complaint alleged that the City operated Modello Park and specifically undertook to provide security for the park through its own employees and through the Broward County Sheriff's Office. The complaint also alleged that the City knew or should have known that at least seven shootings occurred in the park or in its immediate vicinity between December of 1988 and July 12, 1996 (two of these shootings were "drive-by" shootings), and that the park had a high incidence of gang-related activity, assault, battery, sexual battery, robbery, illegal possession of various weapons, and drug-related offenses. According to appellant, the City failed to take adequate measures to make the park safe and failed to warn the public of the dangerous conditions which allegedly existed at the park.
In Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985), the Florida Supreme Court noted that in order for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct. The court undertook to clarify the concept of governmental tort liability by placing governmental functions and activities into the following four categories:
(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens.
Id. at 919. There is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions described in categories I and II because there has never been a common law duty of care with respect to these functions. See id. at 921. On the other hand, there may be governmental liability under categories III and IV depending upon the facts of each case because there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed. Once a governmental function is determined to fall in category III or IV, the court must determine whether the governmental entity's act or omission was an operational or planning function. Planning functions are discretionary and no tort liability may arise; operational functions may give rise to liability.
Appellant argues that since a private landowner has the duty to protect invitees from criminal attacks which are reasonably foreseeable, the government should have the same obligation to protect invitees on its public park property. Indeed, many cases have accepted the general proposition that a governmental entity may be liable to an invitee for reasonably foreseeable criminal attacks committed by third parties on public property. See, e.g., City of Belle Glade v. Woodson, 731 So.2d 797 (Fla. 4th DCA 1999); Barrio v. City of Miami Beach, 698 So.2d 1241 (Fla. 3d DCA 1997); Hill v. City of North Miami Beach, 613 So.2d 1356 (Fla. 3d DCA 1993).
In Ameijeiras v. Metropolitan Dade County, 534 So.2d 812 (Fla. 3d DCA 1988), the appellant brought suit against Dade County after he was shot during an attempted robbery while jogging on the nature trail at Bird Drive Park. Ameijeiras alleged that Dade County knew that homosexual activity, illicit drug dealing and arson attempts had occurred in the park, but failed to provide adequate security. See id. at 813. Dade County argued for summary judgment, pointing out that no violent attacks had occurred within the two *14 years preceding the attack on Ameijeiras and that the attack was not foreseeable. See id.
In affirming the trial court's final summary judgment in favor of Dade County, the third district pointed out that "[a] landowner has a duty to protect an invitee ... from a criminal attack that is reasonably foreseeable," but that such duty arises only when the landowner has actual or constructive knowledge of similar criminal activities committed on the premises. Ameijeiras, 534 So.2d at 813. The court went on to hold that, as a matter of law, the attack against Ameijeiras was unforeseeable.
[T]he record discloses that no violent crimes were reported to Dade County in the two years prior to the attack on Ameijeiras; Ameijeiras introduced no evidence that Dade County knew of the existence of violent criminal activity in Bird Drive Park. In the absence of proof that it had actual or constructive notice of similar criminal activity in Bird Drive Park, Dade County may not be held liable for the attack on Ameijeiras because, as a matter of law, the attack was not foreseeable.
Id. at 813-14.[1]
Because the allegations concerning foreseeability in the instant case should at least allow the complaint to survive a motion to dismiss, we must address the issue of sovereign immunity. The facts here are somewhat similar to those in our recent decision in City of Belle Glade v. Woodson, 731 So.2d 797 (Fla. 4th DCA 1999). There, plaintiffs brought a wrongful death and personal injury action against the City of Belle Glade after a shooting which occurred on the premises of the city's Civic Center "where a large crowd of youths had gathered to attend an unauthorized dance." Id. at 797. The basis of the appellee's suit "was that the City breached its duty to properly maintain and operate its Civic Center as a place of public entertainment by failing to provide adequate security for the teen dance when the City knew from past experience that such dances were dangerous events generally involving disorderly conduct." Id. At trial, the City contended that it had sovereign immunity because protecting the public safety was a category II governmental function. See id. After the jury returned a verdict for the plaintiffs, the City appealed on the ground that the trial court erred by failing to enter a directed verdict on behalf of the City. This court affirmed and agreed with the plaintiffs that maintaining and operating the Civic Center falls within Trianon Park category III; thus, the City had "the same common law duty as a private person to properly maintain and operate the property." Id. at 798.
In the instant case, similar to Woodson, we find that the City had the same duty as a private party would have in maintaining and operating the premises of Modello Park. The complaint alleges that the City of Dania undertook the responsibility of operating the park and specifically undertook the responsibility of providing "security" within the park.[2] Appellant alleges in the complaint that the City knew or should have known of the danger of violence in the park but failed to take adequate steps to warn, or minimize the risk to, visiting citizens. As discussed in Ameijeiras, a property owner has a duty to protect invitees from reasonably foreseeable *15 criminal acts committed on the premises. The City's duty to appellant as an invitee on the premises, comparable to that which would arise in a case involving premises liability in the private sector, could derive from either category III or category IV. See Trianon, 468 So.2d 912, 921.
Appellee relies on Dennis v. City of Tampa, 581 So.2d 1345 (Fla. 2d DCA 1991), where the trial court entered a final summary judgment in favor of the City of Tampa in a personal injury action where the plaintiff was injured when walking in the municipal park and struck from behind by a passing bicyclist. The plaintiff's complaint was based on the theory that her injuries were caused by the City's failure to prevent a bicyclist from riding his bicycle at a high rate of speed on a path used by walkers and bicyclists. The trial court entered summary judgment for the City on sovereign immunity grounds, concluding that a law enforcement officer owes no legal duty to prevent a plaintiff's injury by arresting a third person or by otherwise enforcing the law. See id. at 1347 (relying on Everton v. Willard, 468 So.2d 936 (Fla. 1985)).
On appeal, the Second District concluded that the suit was not barred by sovereign immunity, but nevertheless affirmed the trial court's order of final summary judgment for the City. The court concluded that enforcement of a speed limit is a category II function, but that the case did not involve such a function. The court also concluded that the decision to build an exercise path and the obligation to maintain it is a category III function involving capital improvements and property control, but that the case did not involve a category III function because the plaintiff did not allege that the path was defective. See Dennis, 581 So.2d at 1348. The court then stated that "[t]he standards of care owing under any common law duty within the general services concept of category IV are not entirely clear." Id. Nevertheless, the court found that a category IV function was most likely involved, even though the City's duty to provide supervision for the benefit of invitees in public parks might also be derived from common law concepts of premises liability and, thus, appropriately described as a property control function under category III. Id. The court stated:
The limited standard of care placed upon private landowners to supervise the potentially negligent conduct of third persons causes us to conclude that the obligation to supervise described in Avallone[[3]] should not be applied universally to all areas in public parks. When the governmental subdivision sponsors or schedules an unusually dangerous activity at a park or has reason to anticipate a crowd so large that a private landowner would be obligated to provide supervision under like circumstances, the standard of care required of a governmental subdivision may create a jury question. On the other hand, typical recreational activity during low-use hours, without some additional risk factor, does not create a jury question concerning the governmental subdivision's standard of care. A case should not be submitted to a jury merely because an accident in a public park might have been prevented if more tax dollars had been spent on greater supervision. This analysis is not based on the defense of sovereign immunity, but rather on the scope of the standard of care owed by a governmental subdivision under any duty to supervise public facilities.
Id. at 1349.
As specifically recognized in the opinion, the result in Dennis was not predicated on *16 the defense of sovereign immunity, but was based on the court's perception of the scope of the City of Tampa's standard of care due and owing under the specific facts presented in that case:
We are convinced that no reasonable jury could find that the City is obligated to pay for supervision of park patrons engaged in typical recreational activities in order to prevent negligent conduct during low-use hours or in areas that are not expected to attract crowds.
Dennis, 581 So.2d at 1350. The "scope" of the City's standard of care in the instant case is different from that in Dennis precisely because the facts and the allegations of negligence in the two cases are different. The Dennis court stated:
We note that this case addresses a standard of care concerning supervision of activities of third persons which may result in negligent injury. It does not involve any issue concerning the obligation to protect citizens from criminal misconduct by third persons. Cf. District Bd. of Trustees of Miami Dade Community College v. M.H., 578 So.2d 8 (Fla. 3d DCA 1991).
581 So.2d at 1350 n. 4.
Here, there are allegations that because of the history of violent criminal acts in Modello Park, the City knew or should have known that visitors to the park faced a higher than normal risk of being injured by exposure to these violent criminal acts. The "additional risk factors" which the court in Dennis speculated would give rise to a duty of care are present in the instant case. Of course, whether or not the specific allegations of foreseeability were enough to put the City on notice, and whether the City violated the standard of care would be questions of fact. We simply conclude that under the facts alleged in the complaint, a duty of care on the part of the City could legally arise such that disposal of this case on a motion to dismiss was error. See Woodson; Ameijeiras.
Lastly, the facts alleged against Jenne clearly refer to category II functions. A law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole. See Everton v. Willard, 468 So.2d 936, 938 (Fla.1985). The victim of a criminal offense which might have been prevented through reasonable law enforcement action does not establish a common law duty of care to the individual citizen and resulting tort liability. There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law.
AFFIRMED in part, REVERSED in part, and REMANDED.
WARNER, C.J., and GUNTHER, J., concur.
NOTES
[1] In a special concurring opinion, Judge Jorgenson stated that he would not reach the foreseeability question and would affirm on the basis of sovereign immunity. "Protection of the public against third party criminal attacks on public parkland is an inherently governmental function for which there has never been a common law duty of care." 534 So.2d at 814 (citing Trianon Park)(emphasis added). Subsequent case authority, as discussed supra, appears to have soundly rejected Judge Jorgenson's interpretation of Trianon Park.
[2] Although the complaint does not state exactly how the City specifically undertook to provide security, or which of its employees were dedicated to this purpose, on a motion to dismiss, the allegations of the complaint must be accepted as true.
[3] See Avallone v. Board of County Comm'rs of Citrus County, 493 So.2d 1002 (Fla.1986)(holding that a governmental unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question; however, once the unit decides to operate the swimming facility, it assumes common-law duty to operate the facility safely, just as private individuals are obligated under like circumstances).