947 So.2d 512 (2006)
Patrick FRANCO, etc., Appellant,
v.
MIAMI-DADE COUNTY, etc., Appellee.
No. 3D05-1074.
District Court of Appeal of Florida, Third District.
December 20, 2006.
Rehearing Denied February 12, 2007.
*514 Wasson & Associates and Roy D. Wasson and Annabel C. Majewski; Daryl L. Merl, Miami, for appellant.
Murray A. Greenberg, Miami-Dade County Attorney, and Craig E. Leen, Assistant County Attorney, for appellee.
Before FLETCHER and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
Patrick Franco ("plaintiff"), as personal representative of the estate of Ida Franco, appeals an order granting the defendant Miami-Dade County ("County") summary judgment in a wrongful death action. We affirm.
On May 24, 1997, the decedent, Ida Franco, arrived at her home complaining of chest pains. The plaintiff and Linda Wessner, Ida Franco's daughter, were present. The record shows that Linda Wessner called 911 and also called a family friend, Dr. Ventura, seeking advice. Dr. Ventura, an ophthalmologist, obtained the name of a cardiologist, Dr. Palomo, and arranged for him to meet Ida Franco at the emergency room of South Miami Hospital.
Thereafter, Miami-Dade County Fire Rescue ("Fire Rescue") was dispatched to Ida Franco's home. Upon arrival, Fire Rescue determined that Ida Franco had sustained a myocardial infarction and was both "critical" and "unstable." Linda Wessner claims that when Fire Rescue arrived, she asked Lieutenant Olivera to transport her mother to South Miami Hospital, where Dr. Palomo was waiting for her. However, Lieutenant Olivera concluded that because Ida Franco was "critical" and "unstable" she should be transported to Doctors' Hospital, the closest facility that provided care for critical adult patients.[1] Ida Franco died shortly after arriving at Doctors' Hospital.
In his deposition, Lieutenant Olivera stated that he determined which hospital to transport Ida Franco pursuant to the "hospital capability chart." The hospital capability chart is drafted by the policy and protocol committee of the Emergency Medical Services Division of the Miami-Dade County Fire Department.[2] The hospital capability chart is compiled from information provided by several hospitals in the County. Initially, the County sends out a form to a list of hospitals and, thereafter, the hospitals classify themselves according to specialty areas and capabilities. Fire Rescue protocol mandates that paramedics use the hospital capability chart to transport patients to the "closest appropriate facility" for the particular patient's needs. The Fire Rescue protocol also states that the closest appropriate facility for an "unstable" patient is the closest emergency room, regardless of the patient's condition or the hospital's capability to treat that condition. Conversely, family requests and hospital specialties are taken into consideration for "stable" patients. Here, the hospital capability chart indicated *515 that Doctors' Hospital was an appropriate hospital for unstable patients with cardiac symptoms, and was the closest facility to Ida Franco's home.
The plaintiff brought a negligence action against the County.[3] The complaint alleges that the County, through its employees, failed to follow the Miami-Dade County Fire Department policy and procedure manual, and/or failed to transport Ida Franco to the closest appropriate hospital, and/or failed to transport Ida Franco, a patient suffering from cardiac arrest, to a facility located a mile and a half away that had the capabilities to perform necessary cardiac life-sustaining procedures, as was requested by the family. The County moved for summary judgment, alleging that sovereign immunity barred the claim. The trial court granted summary judgment in the County's favor and the plaintiff's appeal follows.
We review a trial court's entry of summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is appropriate when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Id. (citations omitted). If even the slightest doubt exists regarding the existence of material issues of fact, a trial court is required to deny summary judgment. McQueen v. Roye, 785 So.2d 512, 514 (Fla. 3d DCA 2000) (citing Monroe County v. New Port Largo, Inc., 441 So.2d 173 (Fla. 3d DCA 1983)).
In reviewing the trial court's decision, we must follow the framework set forth in a recent Florida Supreme Court decision considering the issue of governmental tort liability. In Pollock v. Florida Department of Highway Patrol, 882 So.2d 928 (Fla.2004), the Florida Supreme Court clarified the complex and multifaceted Florida law that has developed over the years on the issue of sovereign tort immunity. Pursuant to section 768.28, Florida Statutes, the State of Florida has waived sovereign immunity from liability in tort actions "for any act for which a private person under similar circumstances would be liable." Pollock, 882 So.2d at 932 (citations omitted); see § 768.28, Fla. Stat. (1995). Therefore, unless a common law or statutory duty of care exists that is applicable to an individual under similar circumstances, there can be no governmental liability. Pollock, 882 So.2d at 932 (quoting Henderson v. Bowden, 737 So.2d 532, 534-35 (Fla.1999)).
In Pollock, the court held that the question of whether a governmental actor owed a duty of care with respect to the alleged negligent conduct is a prerequisite to conducting a sovereign immunity analysis. See id. at 932-33, 938 (concluding that a finding that the Florida Department of Highway Patrol did not have an underlying common law or statutory duty of care to motorist was determinative and, therefore, a sovereign immunity analysis was unnecessary) (citations omitted). If the governmental actor owes a duty of care to the plaintiff, then it must be determined whether sovereign immunity bars an action for the alleged breach of that duty. Id. at 933 (citing Henderson, 737 So.2d at 535) (finding that a "threshold matter" in determining governmental liability is whether the [defendant] had a duty to act with care toward the decedents); see also Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir.2001)(citing Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989)); *516 Breaux v. City of Miami Beach, 899 So.2d 1059, 1063 (Fla.2005). Conversely, if there is a finding that no statutory or common law duty of care exists regarding the government's conduct, the question of sovereign immunity need not be reached. Pollock, 882 So.2d at 932-33, 938 (stating that clarification of the law on sovereign tort immunity was necessary because of the language in this court's opinion in Florida Department of Highway Patrol v. Pollock, 745 So.2d 446 (Fla. 3d DCA 1999), that the government's actions were not operational in nature and, therefore, no special duty was owed to the plaintiffs).
Under Florida law, an independent tort duty arises when a defendant, either a public or private citizen, creates situations which place people within a "zone of risk" that creates or allows certain dangers to exist. See City of Pinellas Park v. Brown, 604 So.2d 1222, 1225 (Fla.1992) (finding that police officers who engaged in a high speed chase owed a duty to deceased motorist) (citing Kaisner, 543 So.2d at 735-36 (finding county owed motorist a duty of care when police officer ordered the motorist to stop and, thereby, placed the motorist in police custody)); see also Lewis, 260 F.3d at 1263 (finding that police officers owed the deceased a duty of care when using their firearms); Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 920 (Fla.1985) (recognizing that common law duties of care are applicable to government employees in the operation of motor vehicles and the handling of firearms); Collazos v. City of West Miami, 683 So.2d 1161, 1164 (Fla. 3d DCA 1996) (finding that the city owed children participating in an after-school park activity a duty to perform services in a prudent manner). However, Florida courts have also determined that no independent tort duty of care arises where the conduct in question involves nothing more than the carrying out of a particular governmental function. See Pollock, 882 So.2d at 936 (finding that the Florida Highway Patrol did not, by words or actions, create a duty of care toward the decedents "over and above its general duty to enforce the state's traffic laws" when it failed to respond to an emergency call); City of Daytona Beach v. Palmer, 469 So.2d 121, 122-23 (Fla.1985) (finding that there was no statutory or common law duty of care to provide fire protection services to individual property owners); Trianon, 468 So.2d at 917, 919-20 (finding no duty of care exists with regard to how the legislature, commissions, boards, or city councils carry out functions of enacting laws or regulations, and when government employees are carrying out discretionary police powers).
Importantly, we note that while the Fire Rescue's written policies containing these protocols may be instructive in determining whether there was a breach of an independently owed duty of care, they do not in and of themselves create a special tort duty to individual members of the public. See Pollock, 882 So.2d at 937 (citing Alderman v. Lamar, 493 So.2d 495, 497-98 (Fla. 5th DCA 1986)(holding that the regulation requiring the Florida Highway Patrol to report damaged road signs did not impose a duty to report or repair damaged signs)); Metro. Dade County v. Zapata, 601 So.2d 239, 243-44 (Fla. 3d DCA 1992) (finding that county lifeguard training video served as evidence relevant to the standard of care but did not itself establish a legal duty). Thus, the hospital capability chart, utilized by Lieutenant Olivera to conclude that Ida Franco should be transported to Doctors' Hospital, does not give rise to a negligence claim because it is a pre-designed protocol that contains guidelines for paramedics in an emergency situation to determine the appropriate facility *517 for a patient's needs. Moreover, policies on how to respond to emergencies, and how to assess and treat the needs of patients, similarly do not create an independent duty to the public. See Pollock, 882 So.2d at 936-37.
However, while the policies established by Fire Rescue do not create an independent actionable duty, a duty of care arises if Fire Rescue creates situations which place people within a "zone of risk" where certain dangers may exist. Here, by exercising its discretion to provide a patient with medical care, the County created a "zone of risk" which raised an actionable duty to perform that service in a reasonably prudent manner. Clearly, the Fire Rescue creates a "zone of risk" accompanied by a corresponding duty, when it diagnoses, treats, and transports patients in an emergency situation. Notably, the Fire Rescue's policies, manuals, and protocols, which paramedics are mandated to follow, serve as evidence of the applicable standard of care. Therefore, pursuant to the enactment of section 768.28, Florida Statutes, like a private actor, the County may also be held liable to a patient for any negligent conduct in the instant situation.
Although we conclude that the Fire Rescue assumes a duty of care when it obtains control of a patient in an emergency situation, we find that in this case, the duty owed to Ida Franco was not breached. Here, our stage of review is limited to the facts in the record construed in the light most favorable to the plaintiff. After a careful review of the record, we find that no dispute of material fact exists as to whether the paramedics failed to follow Fire Rescue's protocol or whether Doctors' Hospital was the closest appropriate facility to treat Ida Franco. Lieutenant Olivera's testimony that his evaluation of Ida Franco deemed her "critical" and "unstable" is uncontested. Additionally, it is undisputed that Lieutenant Olivera transported Ida Franco to the closest appropriate hospital pursuant to the hospital capability chart. Clearly, Lieutenant Olivera cannot be faulted for adhering to the Fire Rescue's protocol, which determines the closest appropriate hospital for a critical and unstable patient suffering from cardiac arrest. There are no genuine issues of material fact as to whether Fire Rescue provided Ida Franco with medical care that comports with the applicable standard of care, as evidenced by the protocol. Therefore, we find that in this case, the lack of a breach of the applicable duty of care renders an independent sovereign immunity analysis unnecessary. Accordingly, we affirm the order granting the County summary judgment.
Affirmed.
FLETCHER, J., concurs.
SCHWARTZ, Senior Judge (specially concurring).
Without reaching the issue of the existence of a cognizable duty, I concur in affirmance because of my agreement with the conclusion that, as a matter of law, there was no breach.
NOTES
[1] It is undisputed that Doctors' Hospital is approximately a mile and a half closer than South Miami Hospital to Ida Franco's home.
[2] The Emergency Medical Services Division of the County is responsible for coordinating the medical care strategies and rescue activities for operational units of the Fire Rescue. The hospital capability chart is one of the guidelines authored by the Emergency Medical Services Division and is used by paramedics in the field.
[3] The plaintiff also initiated suit against Doctors' Hospital and the treating physicians in the emergency room.