ALTENBERND, Judge,
Concurring.
On remand, when the trial court evaluates which prior incident reports to admit into evidence, it seems to me that it may be useful for the court to consider more thoroughly the plaintiffs theories of liability in this case. The theories may affect the extent to which some prior incidents are relevant, admissible evidence.
There is no debate that the relationship between a restaurant and its patron is one that invokes a duty of care under negligence law on the part of the restaurant. In Allen v. Babrab, Inc., 438 So.2d 356 (Fla.1983), the supreme court announced that a restaurant has a general standard of care to protect a patron from the tortious conduct of another patron or third party if (1) the restaurant is on notice of the dangerous propensities of the particular third party or (2) there has been a sufficient history of violent conduct by third parties, in general, to require the restaurant to foresee the likelihood of such violent conduct and protect patrons from the known risk.
This two-part general standard of care, which is a proposition of law created by the court, can generate, as a matter of case-specific fact, a variety of specific standards of care. See, e.g., Butala v. Automated Petroleum & Energy Co., Inc., 656 So.2d 173 (Fla. 2d DCA 1995) (discussing the relationship of a general standard of care created by the judiciary and the specific standard of care established by the jury). The specific standard of care depends in large part upon the risks that were foreseeable in light of all the circumstances by an ordinary reasonable person at the time of the occurrence.
In this case, the evidence suggested several different specific standards of care. First, the Irish family may have been sufficiently rowdy earlier in the day such that it should have been foreseeable to a restaurant manager that they were likely to become a risk to patrons later in the evening. If so, a jury could decide that the patrons were owed a specific standard of care requiring the restaurant to remove or deny entrance to the family before the incident occurred.
Second, the family may have been sufficiently rowdy near the time of last call such that a reasonable manager, who had actual knowledge of the family, would have foreseen the risk of violence such that he would not have left one small waitress to handle the situation by herself. If so, a jury could decide that the patrons were owed a specific standard of care requiring the manager either to stay downstairs as added protection or to arrange on the spot for additional protection.
Third, the restaurant may have had a sufficient history of violent conduct by third parties during the late night hours immediately preceding last call such that the restaurant could be reasonably expected to foresee the likelihood that violent conduct would occur during those limited hours. If so, the restaurant might owe a specific standard of care to provide extra security to protect patrons from the known risk at that time.
Finally, the restaurant may have had enough incidents of violent conduct by third parties throughout the entire day to require the restaurant to foresee a broader *647 risk of violence. If so, a jury might conclude that the restaurant owed a specific standard of care to provide additional security whenever the restaurant was open.
As to the first two theories, the incident reports have limited, if any, relevance. Possibly they could demonstrate prior experiences of this manager that might heighten his ability to foresee that the circumstances presented by the family were likely to become a risk. As to the third theory, in order to be relevant, it would seem that the incident reports would need to concern events toward the end of the business day. As to the final theory, a much broader approach to the reports would seem appropriate.
We reverse because the limitations placed on the admissibility of these incident reports, at a minimum, affected the ability of the plaintiff to litigate the third and fourth theories.